LOIS THACKER, Adm'r of the Estate of Leslie Thacker, Deceased, Plaintiff-Appellee, v. UNR INDUSTRIES, INC., *et al.*, Defendants-Appellants.

Fourth District   No. 4—89—0767

Opinion filed May 9, 1991.

Michael D. Freeborn, Steven M. Hartmann, and Richard E. Meunier, all of Freeborn & Peters, of Chicago, and Margaret S. Garvey, of Freeborn & Peters, of Denver, Colorado, for appellants.

James Walker, Ltd., of Bloomington, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On March 1, 1982, plaintiff Lois Thacker, individually and as administrator of the estate of her deceased husband, brought suit in the

circuit court of McLean County against Manville Corporation, Manville International Corporation, and others. Damages were sought for tortious injuries to and the death of plaintiff's decedent as a result of cancer which had resulted from his exposure to asbestos sold by those defendants to the Bloomington plant of Union Asbestos Rubber Company (UNR or UNARCO), where the decedent had worked for many years.

Following a long delay resulting from the bankruptcy of the above-mentioned defendants and other related Manville entities, the Manville personal injury settlement trust (Trust) was created in the bankruptcy proceedings to assume the liabilities for asbestos-related personal injury claims against the Manville entities. The Trust was substituted as a party defendant for the Manville entities, and the case proceeded to a trial of the claims against the Trust. On August 24, 1989, following a jury trial, the circuit court entered judgment on jury verdicts in favor of plaintiff individually in the sum of $36,471.52 and as administrator in the sum of $244,359.19.

Although other claims in the case were pending at the time, the circuit court subsequently entered an order pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)) making the judgments on the verdicts appealable. Appeal was taken by the Manville Corporation Asbestos Disease Compensation Fund (Fund), successor to the Trust. The Fund maintains the defense was entitled to a judgment *n.o.v.* because plaintiff failed, as a matter of law, to prove asbestos sold by Manville entities was a proximate cause of the injury to and death of plaintiff's decedent. The Fund also maintains it should be granted a new trial because the circuit court erroneously (1) refused to permit the defense to interject the issue of superseding cause; (2) denied the defense adequate preparation time by consolidating the case with another case and putting the case on an expedited schedule; and (3) made various procedural rulings denying the defense a fair trial. We disagree and affirm.

The question of the sufficiency of the proof of causation is the most difficult question in the case, but most of the underlying facts are not disputed. The decedent worked for UNARCO at its Bloomington plant from 1954 through 1962 and all but a few months of that employment was spent in the pipe-covering department. The plant consisted of primarily an open area 600 feet in length and 300 feet in width with a 95-foot ceiling. The decedent died December 30, 1981, of asbestosis and lung cancer. The Fund stipulated the Manville entities knew in 1954 that asbestos fiber they were selling had caused asbestosis and cancer in people occupying employment similar to that of

the decedent. No one from UNARCO or the Manville entities ever advised the employees at the Bloomington plant that breathing asbestos could be hazardous or that risk of exposure could be reduced by taking appropriate safety precautions.

Evidence indicated that during the decedent's tenure at the Bloomington plant, the only shipments by Manville entities to the Bloomington plant were shipments of 25 tons each in 1956, 1957, and 1958. However, evidence also indicated that between 1950 and 1953, prior to decedent's tenure at the plant, some 475 tons of asbestos had been ordered by the Bloomington plant from Manville entities. A substantial portion of that asbestos could still have been in the plant when the decedent started work. According to the plant manager, from 1956 to 1962, the plant received some 200 tons per month of asbestos from another manufacturer. If this continued for a full seven-year period, the plant would have received some 16,800 tons of asbestos from that supplier. Thus, during the time the deceased worked at the plant, it received contamination by 16,800 tons of asbestos from another supplier plus 75 tons from Manville entities together with whatever remained of the 475 tons it received in the four-year period prior to the decedent's employment.

The problem with showing the causal relationship between the decedent's infliction and the asbestos supplied by Manville entities is not limited to the disparity between asbestos furnished by Manville and by another supplier. In a deposition taken before his death, decedent testified his job included opening bags of asbestos of a kind not supplied by Manville. Moreover, he testified he did not recall seeing bags of asbestos of the type furnished by Manville either at his work station or elsewhere in the plant. In fact, the only witness who testified to seeing in the plant any bags of asbestos indicating they came from Manville was Eugene Hastings, who worked in the shipping department, and he only testified he saw it in the shipping and receiving area and not at decedent's work station. Ed Weaver, the plant manager, testified he never saw bags of asbestos at the plant containing markings indicating they came from Manville entities. However, evidence was introduced that (1) the plant was quite dusty; (2) when a bag of asbestos was milled, substantial dust was created; (3) the dust blew around the plant; and (4) some of that dust was from Manville asbestos.

This court has, this day, decided the case of *Wehmeier v. UNR Industries, Inc.* (1991), 213 Ill. App. 3d 6, in which plaintiffs there obtained judgments against the Fund. The case concerned asbestos-related diseases of employees working at the same plant as that here.

The time spans involved overlapped, and the uncertainty as to the degree of contact between those injured employees and Manville asbestos was much the same as that here. In a comprehensive opinion, this court discussed and applied a combination of the general substantial-factor test of causation and the "frequency, regularity and proximity test" and the "fiber-drift" theory which involved causation of asbestos diseases. Although the court awarded a new trial, it held the proof of proximate cause was sufficient to support the verdict.

We need not repeat the analysis of *Wehmeier*. We follow the precedent set there. Testimony was presented here that plaintiff's decedent suffered from lung cancer which was likely caused by the decedent's contact with asbestos and that only slight contact with any particular type of asbestos would be sufficient to produce the cancer. Considering that evidence and the evidence that asbestos dust, of whatever origin, drifted through the plant where plaintiff's decedent worked, we hold the evidence here created a jury question as to whether Manville asbestos was a proximate cause of the decedent's cancer.

Unlike in *Wehmeier*, no error occurred here which requires a new trial. As in *Wehmeier*, the Fund maintains here that the circuit court erred in not permitting the defense to interject, as an affirmative defense, the existence of an intervening factor. There, a split panel held the circuit court erred in rejecting evidence to that defense. Here, the question is not before us, because the defense did not raise the issue in its post-trial motion. In a case tried by a jury, Supreme Court Rule 366(b)(2)(iii) (107 Ill. 2d R. 366(b)(2)(iii)) requires a claim of error to be preserved by inclusion in a post-trial motion. In *Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 415 N.E.2d 337, the supreme court indicated few, if any, exceptions to the rule are permitted. The prior case of *Hux v. Raben* (1967), 38 Ill. 2d 223, 230 N.E.2d 831, relied upon by the Fund, did not involve a jury trial and does not set forth any theory which would negate the broad scope of the holding in *Brown*.

Various other claims of error by the Fund were also waived by failure to include them in the post-trial motion of the defense. (*Brown*, 83 Ill. 2d 344, 415 N.E.2d 337.) One such contention was that the circuit court failed to give the defense time to prepare for trial. Significant delay had occurred mostly because of the bankruptcy proceeding. Thus, the court was placed under substantial pressure to proceed and did require the parties to move rapidly. We note from the evidence presented that prejudice to the defense arising from the court's requirements was unlikely. Another such assertion by the

Fund is that the circuit court erred in denying a defense motion to dismiss because of the pendency of another case "between the same parties for the same cause." (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(3).) That motion was untimely filed on the day of trial. The post-trial motion also made no mention of error in the circuit court's refusal to strike allegations of wilful and wanton misconduct in the complaint and treating a stipulation by the Fund as an admission. The Fund cannot now request we consider those assertions on review.

■ Finally, we consider the Fund's assertion that the circuit court erred by refusing to allow the defense to call, as a witness, Dr. Allen Dillingham, allegedly an expert on economic-loss analysis. The trial court sustained objection to calling the witness on the basis that the name of the witness had not been timely disclosed to plaintiff as required by Supreme Court Rule 220(b) (107 Ill. 2d R. 220(b)). This court discussed the operation of that rule in *Wehmeier*. Here, the record indicates the defense first contacted Dillingham five days before trial and first told plaintiff of its intention to call Dillingham when he was tendered as a witness the fourth day of the trial.

No pretrial conference was held, and the defense did make a disclosure of the name of the witness well before 90 days after learning of the name of the witness. However, the trial court may also give consideration to the good-faith requirement in giving timely disclosure inherent in Supreme Court Rule 220. (*Barth v. Reagan* (1990), 139 Ill. 2d 399, 415, 564 N.E.2d 1196, 1204; *Wehmeier*, 213 Ill. App. 3d at 21.) The conduct of the defense in waiting nine days before informing plaintiff of the evidence of Dillingham as an expert was not cured by an offer, made by the defense when Dillingham was called, that the plaintiff could depose him before his testimony. The circuit court acted well within its discretion in sustaining plaintiff's objection to the tender of Dillingham as a witness.

The judgment appealed is affirmed.

Affirmed.

LUND, P.J., and KNECHT, J., concur.