854 So.2d 979 (2003)
Joe BOOTH, et al.
v.
ACANDS, et al.
No. 2003-C-0511.
Court of Appeal of Louisiana, Fourth Circuit.
August 13, 2003.
Donni E. Young, Scott M. Galante, Motley Rice LLC, John F. Dillon, John F. Dillon PC, New Orleans, LA, for Plaintiff.
*980 David Williams, Lawrence J. Duplass, and Andrew D. Weinstock, Duplass, Zwain, Bourgeois & Morton, Metairie, LA, for 3M Company.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge MAX N. TOBIAS, JR. and Judge LEON A. CANNIZZARO, JR.).
JOAN BERNARD ARMSTRONG, Judge.
In this asbestos-related terminal mesothelioma tort action, defendant 3M Company ("3M"), formerly known as Minnesota Mining & Manufacturing Co., seeks supervisory review of the trial court's judgment denying its motion for summary judgment and motion for protective order.
Joe Booth, his spouse Alberta Booth, and Joe Booth's daughters, Cynthia Booth, Deidre Booth Slack and Terri Booth, originally instituted this action on November 28, 2000, seeking damages, including those for loss of consortium, related to Joe Booth's exposure to large quantities of asbestos-containing products designed, mined, manufactured, advertised, marketed and/or distributed by numerous defendants. 3M was not named a defendant in this original petition. A first supplemental and amending petition was filed at some point A second supplemental and amending petition was filed by Alberta Booth, Cynthia Booth, Diedra Booth Slack and Terri Booth asserting a wrongful death claim and substituting themselves in place of the decedent Joe Booth for his survival claim. 3M was added as a defendant in this second supplemental and amending petition.
Plaintiffs filed a notice of subpoena duces tecum and records deposition and a notice of a La. C.C.P. art. 1442 discovery deposition. 3M then filed a motion for protective order as to that discovery, as well as a motion for summary judgment.
Following a hearing on both motions, the trial court denied 3M's motions for protective order and for summary judgment. The trial court also stayed the discovery pending this court's disposition of 3M's writ application, and ordered that prior to the La. C.C.P. art. 1442 depositions both parties enter into a confidentiality agreement regarding the disclosure of privileged documents. This application for supervisory writs followed. The plaintiffs have been given an opportunity to file an opposition, there has been a reply to that opposition filed by 3M, and we now render this opinion.
Plaintiffs alleged in their second supplemental and amending petition that 3M manufactured and supplied asbestos cloth to Hopeman Brothers at Avondale to which plaintiff's decedent Joe Booth was exposed.
Included in 3M's writ application are a number of depositions and a two-page "material requisition" form from Hopeman Brothers, Inc., in New York. This material requisition form, dated "7.7.67," is for 30,000 linear feet of one-inch wide asbestos tape "for sheet metal lining in mach. casing only." Handwritten on one page of the form is "Minn. Mining & Mfg. B8085." One page of the form is stamped "Purch. Dept. Sep 27, 1967." Also on the form next to the word "CONTRACT" is written "1126/30 AVONDALE", and next to the phrase "DELIVER TO" is written "JOB." 3M submits that this is plaintiffs' sole documentary support for their claim.
A December 9, 2002 letter from 3M's counsel to plaintiffs' counsel notes that plaintiffs listed ninety-five fact witnesses. Counsel for 3M requested notification of which ones would testify that Joe Booth was exposed to asbestos-containing products allegedly manufactured by 3M. Counsel *981 for plaintiffs replied on January 6, 2003 that he was still working on it, but that he would likely call the family, and for product identification he would call Johnnie Johnson, Luther Dempster, "Frenchy" Bordelon and Peter Territo.
Plaintiffs alleged in their petition that decedent Joe Booth worked at Avondale in 1969. Joe Booth's deposition was taken on October 3, 2000, before 3M was named a defendant. Mr. Booth completed the fifth-grade of grammar school before going to work doing odd jobs such as lawn care. His first full-time job was at a grocery store. He could not recall any work before Avondale where he might have been exposed to asbestos. He went to work at Avondale in 1969, but left because he could not take the dust. While at Avondale Mr. Booth insulated pipes and stacks on ships under construction. His foreman at Avondale was "Frenchy" Bordelon. Joe Booth went to work for the school board in 1970 as a maintenance custodian, retiring after twenty-five years, mostly doing maintenance work on boilers and boiler pipes insulated with what he later learned was asbestos. Mr. Booth also testified that some twenty-five years ago he moved on Foucher Street near Tchoupitoulas Street, not far from a National Gypsum facility.
Johnnie Johnson (who 3M represents is now deceased) gave a July 1995 deposition in connection with another action filed in the 24th Judicial District for the Parish of Jefferson. He also testified at the November 1995 trial of that action. Mr. Johnson began working at Avondale in June 1966 as a tack welder. Mr. Johnson only worked as a welder for a short period; he sustained a back injury. By November 1968 he was working in the tool room. He recalled doing tool repairs for Frenchy Bordelon, who supervised insulators. He recalled asbestos products at Avondale, such as a burlap-type cloth, mud (cement) and pipe covering, but did not recall any manufacturer names or initials. Mr. Johnson knew that Hopeman Brothers had been at Avondale for a number of years, and that they finished compartments of the ships. He had seen them working, cutting and fitting hard wallboard, ceiling tile, etc., on occasions when walking through compartments.
Burnett L. "Frenchy" Bordelon, Sr. (who 3M represents is now deceased) testified in a 321-page September 28, 1983 deposition given in connection with a 1980 federal court action. Neither 3M nor Hopeman Brothers had counsel representing them at this deposition. Mr. Bordelon was employed at Avondale at the time of his 1983 deposition, and had been superintendent of insulation and stud welding for forty years, thus covering any time period plaintiffs' decedent Joe Booth worked there. Mr. Bordelon said in his 1983 deposition that Hopeman Brothers did all of the finishing of the inside quarters, but that Avondale also insulated some pipes going into the quarters. Mr. Bordelon named a number of distributors from whom Avondale had purchased asbestos products over the years. He replied in the negative when asked whether they ever purchased from Hopeman Brothers. Avondale used asbestos molded pipe coverings, block insulation, cement (mud), cloth and tape. However, he said they fabricated their own tape from asbestos ("amosite") felt sewn inside of asbestos cloth, because the price for the tape was so high. Mr. Bordelon mentioned a number of manufacturers, but not 3M or its predecessor, Minnesota Mining.
"Frenchy" Bordelon also gave a deposition in September 1984, in connection with a 1982 federal court action. No counsel represented 3M or its predecessor Minnesota Mining, or Hopeman Brothers. The questioning in this deposition was primarily *982 directed to the period from 1966-1969. Mr. Bordelon who was knowledgeable about the types of asbestos products used at Avondale since 1940, as well as the names of manufacturers and distributors of those products, said nothing in this September 1984 deposition about asbestos tape or 3M/Minnesota Mining. He confirmed that Hopeman Brothers was an Avondale contractor in 1968 who, for example, installed sheetrock. When asked whether Hopeman Brothers themselves purchased the insulation they used, Mr. Bordelon replied in the affirmative, stating that as far as he knew Avondale did not supply anything for subcontractors. Mr. Bordelon was asked who would know what insulation products were purchased at Avondale for the period 1966-1968. He said a Mr. Chabert was the only person he could think of.
Peter R. Territo attested in affidavit that he was employed by Avondale from 1952 until he retired in 1997. He began working in the Avondale Safety Department in the 1960's. He was not aware of the name of any manufacturer of one-inch wide asbestos tape that may have been used at Avondale, nor of any asbestos-containing product that may have been manufactured by 3M/Minnesota Mining. Mr. Territo further attested that he had never seen the Hopeman Brothers July 7, 1967 material requisition form describing the one-inch asbestos tape, and had no knowledge of any information contained in that form.
The final bit of evidence attached to 3M's writ application are excerpts from the March 23-24, 1994 deposition of Luther Dempster, taken in connection with Mr. Dempster's 1993 action against Avondale and others in Orleans Parish Civil District Court. Hopeman Brothers was at the March 23-24th deposition. Neither 3M nor its predecessor Minnesota Mining were represented at the deposition. In the deposition excerpts, Mr. Dempster does not mention 3M/Minnesota Mining, or asbestos tape. Mr. Dempster does mention asbestos cloth, and identifies photos of asbestos products manufactured by companies other than 3M/Minnesota Mining. 3M represents in its writ application that Mr. Dempster was employed by Avondale from 1952 to 1993. 3M represents in its writ application that Mr. Dempster gave other testimony in depositions on August 27, 1993, July 2, 1997, December 21, 1998 and October 2, 2000, and testified at trial on April 18-19, 1996. 3M represents that copies of those deposition transcripts were not attached to its summary judgment motion due to the volume but were made available upon request, and that plaintiffs did not contest this issue in the trial court.
In its supplemental responses to plaintiffs' interrogatories and requests for production of documents relating to "asbestos-containing products," 3M answered that it never manufactured "asbestos cloth" as it "understands that term;" that following a reasonable inquiry and search to date, it had not located any information or documents that evidence the sale of "asbestos cloth" to Hopeman Brothers or Avondale Shipyards; and because it did not manufacture "asbestos cloth," it had not located any records that identify distributors of such product in Louisiana.
3M stated in its second supplemental response to plaintiffs' interrogatories that it conducted a search and provided plaintiffs' counsel with documents about Irvington Arc Proofing products, Nos. 7000 and 7500. 3M states in its writ application that Irvington was a company it acquired that manufactured electrical arc tape used for high voltage arcing (not for sheet metal lining), and that plaintiffs had specifically requested information regarding Irvington electrical tape. 3M further stated in its *983 responses to interrogatories that it searched for and provided plaintiffs' counsel with all non-privileged documents about these two products, and was willing to provide plaintiffs' counsel with confidential documents about the products on the condition that plaintiffs' counsel executes an appropriate protective order. Attached to the writ application is a letter from counsel for 3M to counsel for plaintiffs, supposedly hand-delivered, in which 3M represents that there are additional items it is willing to produce pursuant to the execution of a protective order. 3M represents in its writ application that plaintiffs' counsel has not executed such protective order.
Appellate courts review the grant or denial of a motion for summary judgment de novo. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, p. 7 (La.2/29/00), 755 So.2d 226, 230. A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). A fact is material when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Id.
La. C.C.P. art. 966(C)(2) provides that where the party moving for summary judgment will not bear the burden of proof at trial, as in the instant case, his burden does not require him to negate all essential elements of the adverse party's claim, but rather to point out to the court an absence of factual support for one or more elements essential to the adverse party's claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact, and the movant is entitled to summary judgment as a matter of law. Id.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by La. C.C.P. art. 969. La. C.C.P. art. 966(A)(2). Summary judgments are favored, and the summary judgment procedure shall be construed to accomplish those ends. Id. Nevertheless, despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and all doubt must be resolved in the opponent's favor. Willis v. Medders, 2000-2507, p. 2 (La.12/08/00), 775 So.2d 1049, 1050. A court cannot make credibility determinations on a motion for summary judgment, and must assume that all of the affiants are credible. See Independent Fire Insurance Co. v. Sunbeam Corp., 99-2181, p. 16-17, 755 So.2d at 236.
Circumstantial evidence may be used to prove a plaintiff's case and to defeat a motion for summary judgment. It must exclude with a fair amount of certainty every other reasonable hypothesis and not all other possible causes. Wood v. Becnel, XXXX-XXXX, p. 6 (La.App. 4 Cir. 2/26/03), 840 So.2d 1225, 1228.
Based on the pleadings and depositions, affidavits and evidence contained in the writ application, the only link between 3M *984 and Avondale is the two-page Hopeman Brothers material requisition form. Based on this form, Hopeman Brothers ordered one-inch wide asbestos tape in July 1967 for a contract it had with Avondale. The purchase department date stamp of September 27,1967 suggests that the tape was in fact purchased or ordered. The handwritten note on the form suggests that the tape to be purchased was manufactured, sold and/or distributed by 3M/Minnesota Mining. Although 3M stated in its responses to interrogatories that it never manufactured "asbestos cloth" "as 3M understands that term," in light of the material requisition form, there is a genuine issue of material fact as to whether 3M/Minnesota Mining manufactured, sold and/or distributed asbestos tape to Hopeman Brothers. We reach this conclusion construing all factual inferences reasonably drawn from the evidence in plaintiffs' favor and resolving all doubt in their favor.
A more difficult issue is whether plaintiffs have shown that they can meet their burden of proving that decedent Joe Booth was more probably than not exposed to this 3M asbestos tape requisitioned, ordered and/or purchased by Hopeman Brothers for a contract it had with Avondale. Both Johnnie Johnson and "Frenchy" Bordelon testified that Hopeman Brothers was a subcontractor which did finishing work on the quarters/compartments of ships built at Avondale. Mr. Bordelon said Hopeman Brothers was working there in 1968, and also in 1983, when it was doing "all" of the finishing in the ship quarters. The Hopeman Brothers' material requisition form, referencing an Avondale contract, is dated July 7, 1967, with a purchase department date stamp of September 1967. It could be inferred from all these facts that Hopeman Brothers would have been working at Avondale during the short period decedent Joe Booth worked there during 1969. Joe Booth insulated pipes while working at Avondale, and had to quit because of the dusty environment. "Frenchy" Bordelon, superintendent of insulation work while decedent Joe Booth was employed there as a pipe insulator, stated that Avondale workers sometimes insulated pipes in the ship quarters. This is where Hopeman Brothers performed its work.
Nevertheless, construing all factual inferences reasonably drawn from the evidence in plaintiffs' favor, and resolving all doubt in their favor, the evidence does not show that plaintiffs can meet their burden of proving that it was more probable than not that decedent Joe Booth was exposed to any 3M/Minnesota Mining asbestos tape or cloth requisitioned, ordered and/or purchased by Hopeman Brothers during the brief period in 1969 when he worked at Avondale as a pipe insulator. Accordingly, there is no genuine issue of material fact, and 3M is entitled to judgment as a matter of law.
For the foregoing reasons, we grant in part the defendant 3M's writ application, reverse the judgment of the trial court denying 3M's motion for summary judgment and render judgment dismissing this action as against 3M. The writ application is moot insofar as it seeks reversal of the judgment of the trial court denying 3M's motion for protective order.
WRIT GRANTED IN PART, REVERSED AND DISMISSED.