157 P.3d 406 (2007)
Gary D. ALLEN, Appellant,
v.
ASBESTOS CORP., LTD.; Crown Cork & Seal Company, Inc.; E.J. Bartells Settlement Trust; Garlock Sealing Technologies, LLC; Foster-Wheeler Energy Corporation; Metropolitan Life Insurance Company; Union Carbide Corp.; and Defendants,
Uniroyal, Inc., Respondent.
No. 57723-9-I.
Court of Appeals of Washington, Division 1.
February 12, 2007.
Ordered Published in Full April 16, 2007.
*408 Janet L. Rice, William Joel Rutzick, Schroeter Goldmark & Bender, Seattle, WA, for Appellant.
Chris Robert Youtz, Sirianni Youtz Meier & Spoonemore Seattle, WA, for Respondents.
COLEMAN, J.
¶ 1 Gary Allen sued Uniroyal, among others, claiming his exposure to asbestos dust from Uniroyal predecessor United States Rubber Company's asbestos-containing products caused his lung cancer. Uniroyal moved for summary judgment, alleging that Allen had insufficient evidence of causation, and the trial court granted the motion. Allen claims that the trial court erred in granting summary judgment because he raised an issue of material fact and the trial court should have admitted certain pieces of evidence that would have precluded summary judgment. We agree that, drawing all reasonable inferences in his favor as the nonmoving party, Allen presented sufficient evidence to raise a genuine issue of material fact as to whether Allen's father was exposed to Uniroyal products. Summary judgment was erroneously granted, and we therefore reverse and remand for trial.

FACTS
¶ 2 Allen sued Uniroyal, alleging that his lung cancer was caused by, inter alia, asbestos dust from a product manufactured by Uniroyal predecessor United States Rubber Company[1] that his father brought home from work on his clothes. Allen testified that his father worked at Puget Sound Naval Shipyard for 25 years as an insulator. Allen submitted sales records showing that the shipyard purchased Uniroyal products containing asbestos during the time that his father was employed there.
¶ 3 Uniroyal moved to strike many of Allen's exhibits, and the trial court granted the motion in part. Uniroyal also moved for summary judgment, arguing that Allen had not raised a genuine issue of material fact because he had not put forward sufficient evidence that his father had ever been exposed to Uniroyal products. The trial court granted summary judgment, and Allen now appeals both the summary judgment order and the order granting in part Uniroyal's motion to strike.

STANDARDS OF REVIEW
¶ 4 When reviewing a summary judgment order, we engage in the same inquiry as the trial court.
We will affirm an order granting summary judgment only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In reviewing summary judgment orders, we consider supporting affidavits and other admissible evidence that is based on the affiant's personal knowledge. A party may not rely on mere allegations, denials, opinions, or conclusory statements but, rather must set forth specifics indicating material facts for trial.
Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co., 122 Wash.App. 736, 744, 87 P.3d 774 (2004) (footnotes omitted). The party moving for summary judgment has the initial burden of establishing the absence of an issue of material fact. Young v. Key Pharmaceuticals, Inc., 112 Wash.2d 216, 225, 770 P.2d 182 (1989). If the moving party meets this burden, in order to withstand summary judgment, the nonmoving party must set forth specific facts establishing a genuine issue for trial. Young, 112 Wash.2d at 225-26, 770 P.2d 182. "The evidence and all reasonable inferences therefrom must still be examined in the light most favorable to the nonmoving party to determine if there are genuine issues of material fact for trial." Weatherbee v. Gustafson, 64 Wash.App. 128, 132, 822 P.2d 1257 (1992).
¶ 5 A trial court's evidentiary rulings, on the other hand, are reviewed for manifest abuse of discretion. Int'l Ultimate, *409 122 Wash.App. at 744, 87 P.3d 774. Although the trial court has discretion to rule on a motion to strike, a "court may not consider inadmissible evidence when ruling on a motion for summary judgment." Int'l Ultimate, 122 Wash.App. at 744, 87 P.3d 774.

ANALYSIS
Evidence of Allen's Father's Exposure to Uniroyal Products
¶ 6 Uniroyal moved for summary judgment on the grounds that Allen had offered insufficient evidence of his father's exposure to Uniroyal products. Allen argues that because he offered evidence showing that Uniroyal asbestos cloth was purchased by the shipyard, the trial court should have inferred that the cloth was thereby used at the shipyard. Allen considers this inference of exposure to be reasonable and argues that the trial court was required to resolve all reasonable inferences in his favor when considering Uniroyal's motion for summary judgment.
¶ 7 Asbestos plaintiffs in Washington may establish exposure to a defendant's product through circumstantial evidence. Lockwood v. AC & S, Inc., 109 Wash.2d 235, 744 P.2d 605 (1987). Lockwood established factors that a court should consider to determine whether sufficient evidence of causation exists: (1) plaintiff's proximity to the asbestos product when the exposure occurred; (2) the expanse of the work site where asbestos fibers were released; (3) the extent of time plaintiff was exposed to the product; (4) what types of asbestos products the plaintiff was exposed to; (5) how the plaintiff handled and used those products; (6) expert testimony on the effects of inhalation of asbestos on human health in general and the plaintiff in particular; and (7) evidence of any other substances that could have contributed to the plaintiff's disease (and expert testimony as to the combined effect of exposure to all possible sources of the disease).
¶ 8 The proximity and time factors can be satisfied if there is evidence that the plaintiff worked at a job site where asbestos products were used, particularly where there is expert testimony that asbestos fibers have the ability to drift over an entire job site. See, e.g., Berry v. Crown Cork & Seal Co., 103 Wash.App. 312, 324, 14 P.3d 789 (2000). In Berry, shipyard employees testified that they ordered the defendant's asbestos products for use at the shipyard, and the plaintiff's experts testified that asbestos fibers can drift over an entire shipyard such that anyone who worked anywhere at the shipyard is exposed if asbestos is used there. Berry, 103 Wash.App. at 324, 14 P.3d 789. Plaintiff's experts also opined that asbestos exposure led to plaintiff's death. Berry, 103 Wash. App. at 324, 14 P.3d 789. The defendant moved for summary judgment, and
[t]he critical issue for purposes of summary judgment was whether the plaintiffs raised an issue of material fact as to whether Berry was exposed to Brower products while employed at PSNS. According to Lede's 1984 affidavit, Brower supplied some of the insulation products used at PSNS during both periods (1942 and 1945-50). Moreover, Downey's 1984 testimony that he saw Plant and Carey products "almost every day" during the seven years (1941-48) in which he worked at PSNS, in conjunction with Bradley's testimony that Brower was "a distributor" for Plant and Carey products, raises an issue of fact as to whether Berry was exposed to Brower-supplied products during the time frames in question.
Saberhagen argues that Lede's affidavit leads to impermissible speculation because the plaintiffs do not provide evidence as to "how much or how often PSNS purchased products from Brower, as opposed to Bartells or others." Similarly, Saberhagen claims that Downey's and Bradley's testimony does not support an inference of exposure because "Downey did not say who supplied the Plant and Carey products to PSNS" and "Bradley said nothing to suggest that Brower had ever been the sole source for those products either in 1942 or any other time." We reject Saberhagen's argument. Lede's testimony was that local distributors such as Brower were the first source of supplies for small amounts or immediate needs. Plaintiff's evidence is sufficient to raise an inference *410 that Brower products were used at PSNS during the time periods in question. The extent to which Brower supplied the products as compared with other distributors is irrelevant for purposes of summary judgment.
Berry, 103 Wash.App. at 324-25, 14 P.3d 789.
¶ 9 As in Berry, the central issue on summary judgment here is whether Allen raised an issue of material fact as to whether his father was exposed to Uniroyal products while working at the shipyard. Also like Berry, Allen presented expert testimony that if asbestos cloth was used anywhere at Allen's father's workplace, Allen's father would have been exposed to it because the asbestos dust would have drifted throughout the workplace.
¶ 10 As evidence of use, Allen put forward evidence of three sales orders of Asbeston (an asbestos cloth) in 1958, 1959, and 1960. Uniroyal admits that these orders were made, but claims that they do not give rise to an inference because there is no evidence that the Asbeston was ever used at the shipyard while Allen's father was there. Uniroyal argues that to infer that the Asbeston was used from the sales records alone amounts to impermissible speculation, and thus, there was no genuine issue of material fact as to whether Allen's father was exposed to Asbeston.
¶ 11 But the sales records establish that large quantities of Asbeston were ordered by the shipyard over multiple years. Uniroyal has not explained why the shipyard would order such large quantities of a product it did not use, especially when the orders were placed over a period of time. We conclude that it would be reasonable from this record to infer that Asbeston was used at the shipyard. Because of Allen's expert testimony that if Asbeston was used, Allen's father would have been exposed, the inference that Asbeston was used at the shipyard leads directly to the inference that Allen's father was exposed to Uniroyal's product. In the trial court's consideration of Uniroyal's motion for summary judgment, Allen was entitled to have all reasonable inferences drawn in his favor. The inference of use and exposure is reasonable and is sufficient to raise an issue of material fact; thus, we conclude that the trial court erred in granting summary judgment.
¶ 12 We acknowledge that only one court has relied solely on sales records to infer exposure. See Richoux v. Armstrong Cork Corp., 777 F.2d 296 (5th Cir.1985).[2] And it is true, as Uniroyal points out, that other courts have held that sales records alone are not enough to establish exposure under the facts presented in those cases. See Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156 (4th Cir.1986); Hansen v. New York City Housing Auth., 271 A.D. 986, 68 N.Y.S.2d 71, 73 (N.Y.App.Div.1947); Booth v. Acands, 854 So.2d 979 (La.App.2003). Those cases, however, do not establish a bright-line rule that sales records are not enough to support an inference of exposure. The courts there engaged in fact-specific inquiries to determinein the context of all the evidencewhether sales records can support that inference. In Lohrmann, the court concluded that sales records from one manufacturer did not support the inference of exposure to that manufacturer's products where the plaintiff had testified that he was exposed to asbestos products made by other manufacturers. In Hansen, the court concluded that invoices of asbestos materials to various buildings did not support an inference that plaintiff was exposed because the plaintiff had not established when he worked at those buildings or that he would have been exposed if he had been working there when the materials were used. And in Booth, the court concluded that an invoice of asbestos tape to a job site in 1967 could not support an inference *411 that the plaintiff was exposed to that product when he worked there in 1969. So while it is true that courts have concluded that sales record evidence was not enough to support an inference, each court examined the sales records in light of the totality of the evidence in the case to reach that conclusion. We apply that approach here.
¶ 13 Here, the timing and amounts of the sales permit the reasonable inference that Asbeston was used at the shipyard. The first shipment was a "trial" amount of 100 linear yards in 1958, while the second two shipments over the next two years were for amounts significantly larger (13,391 pounds in 1959 and 5,880 pounds in 1960). The repeated and increasing amount of orders suggests that the product was being used. Because it is reasonable to infer that Uniroyal's product was used at the shipyard and there is opinion testimony in the record that if the product was used Allen's father was exposed, the court erred in granting summary judgment because Allen established the existence of an issue of material fact.[3]
¶ 14 Due to our disposition of this case, we need not consider Allen's appeal of the trial court's evidentiary issues. We elect to do so, however, for clarity in the event that this evidence is proffered at trial.
Exhibit 9
¶ 15 Allen argues that the trial court erred in striking exhibit 9 as lacking authenticity because he put forward evidence of where the exhibit had been stored and when it was obtained. Exhibit 9 is a collection of documents with a cover sheet. Allen's attorney described this exhibit in a declaration as a "true and correct copy of Puget Sound Naval shipyard document pertaining to `Asbeton or equal' on the IWO JIMA stating that the proposal was approved '18 Mar 1960.'" Allen offered this exhibit as evidence linking the Uniroyal product Asbeton with the shipyard at the time his father worked there, but Uniroyal moved to strike the exhibit as hearsay and for lack of proper authentication.
¶ 16 Allen claimed that the exhibit was admissible under the ancient documents exception to the hearsay rule (ER 803(a)(16)), but the trial court ruled that Allen had failed to authenticate the exhibit as an ancient document. The day before the summary judgment hearing, Allen submitted a declaration from an attorney, Kirk Mortensen, who was formerly associated with his counsel's law firm, stating that he received copies of the documents in exhibit 9 either directly from the shipyard or from the Sand Point facility in 1981 after reviewing the originals himself.
¶ 17 To properly authenticate an ancient document, a party must show that it is: "(i) is in such condition as to create no suspicion concerning its authenticity, (ii) was in a place where it, if authentic, would likely be, and (iii) has been in existence 20 years or more at the time it is offered." ER 901(b)(8). According to Uniroyal, Allen did not meet the second and third requirements because there was no evidence that the documents were found in a place where they would have been if they were authentic, and there was also no independent evidence of the documents' age (other than the dates on the documents themselves). Uniroyal also presented evidence that the shipyard did not have any record of documents similar to the collection in exhibit 9.
¶ 18 Despite Uniroyal's argument to the contrary, the second requirement of ER 901(b)(8) does not require a shipyard employee to testify to where the documents were kept or found, but the rule only requires evidence sufficient to support a finding that the document is what its proponent *412 claims it to be. See, e.g., Lockwood, 109 Wash.2d at 250-51, 744 P.2d 605. Mortensen stated in a declaration that he found the documents either at the shipyard or at the national archives in Sand Point (where older shipyard documents were stored)and Uniroyal did not dispute that either of these locations is where authentic shipyard documents would likely be stored. Uniroyal's argument that ER 901(b)(8) requires testimony from someone with personal knowledge regarding the creation of a document is misplacedthe case it cites to support this position is actually analyzing a different authentication evidence rule, ER 901(b)(1), which does require testimony of a witness with knowledge. ER 901(b)(8) sets out the criteria for determining the authenticity of ancient documents, and none of those factors requires testimony of a witness with knowledge about the document's creation.
¶ 19 As to the age of the evidence, the third requirement of ER 901(b)(8), Uniroyal did not present any evidence disputing that the dates on the documents themselves were inaccurate. Furthermore, Mortensen's declaration stated that he had collected these documents in 1981, which was more than 20 years before the time the exhibit was offered. Thus, Allen met all three authentication requirements for exhibit 9 by making a prima facie showing of all three criteria for authenticity of ancient documents, and the trial court erred in striking it.
¶ 20 While we have concluded that the inference of Asbeston use is reasonable based on the evidence that the trial court admitted, exhibit 9which should have been admittedfurther supports the inference. The proposal, approved in 1960 (after the shipyard had already placed orders of Uniroyal asbestos cloth Asbeston), recommends using Asbeston or an equal product. The cover letter to this proposal states that an unspecified asbestos cloth was then used extensively to insulate pipes, and the proposal recommends using the cloth also for ventilation ducts on a particular project. These documents support the inference that the shipyard used Asbeston, rather than just storing it, after it ordered the product in 1958. This relevant evidence should not have been excluded by the trial court because it was properly authenticated, and we therefore reverse this evidentiary ruling.
David Deposition
¶ 21 Allen argues that the trial court erroneously excluded Ralph David's deposition because the deposition is admissible under ER 804's "predecessor in interest" exception.
¶ 22 Certain types of testimony are considered exceptions to the general rule prohibiting hearsay evidence. ER 804(b). One such exception includes:
Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and a similar motive to develop the testimony by direct, cross, or redirect examination.
ER 804(b)(1) (emphasis added).
¶ 23 David's deposition was offered to demonstrate how a shipyard insulator during the relevant time would have used asbestos cloth. At the time of trial David was deceased, and the trial court struck the deposition because Uniroyal was not present at the deposition and had not had an opportunity to examine him.
¶ 24 At trial, Allen argued that the deposition should be admitted because it had been relied upon by one of his experts. Now on appeal, Allen argues that David's deposition was admissible because a Uniroyal predecessor in interest, Raymark, was present at the deposition, and thus, the deposition is former testimony admissible under ER 804(b)(1). Uniroyal contends that because Allen did not argue the application of this exception before, the predecessor-in-interest exception should not be considered for the first time on appeal.[4]
*413 ¶ 25 "Error in the exclusion of testimony by a trial court generally cannot be urged under a theory presented for the first time on appeal." State v. Eaton, 30 Wash. App. 288, 293 n. 7, 633 P.2d 921 (1981). See also RAP 2.5(a) ("The appellate court may refuse to review any claim of error which was not raised in the trial court. . . ."). Thus, because Allen did not raise the predecessor in interest exception before the trial court, we need not consider this argument on appeal.
¶ 26 Furthermore, even if we did consider this argument, it is not clear from the excerpts of David's deposition offered by Allen that Raymark, which Allen claims is Uniroyal's predecessor-in-interest, attended the deposition or examined David. The only attorney questioning David in the excerpted deposition is Allen's attorney, and thus, there is nothing in the record to indicate that Raymark was present or examined David. See Clerk's Papers at 182-87. Because the predecessor-in-interest exception requires the predecessor to have the opportunity to examine the witness and the deposition does not establish that this opportunity existed, the trial court did not err in not applying the exception.
Heyer Declaration
¶ 27 Allen argues that even though Dr. Nicholas Heyer relied on inadmissible documents and information to reach his expert opinion, such reliance is permitted under ER 703, and thus, his declaration should have been admitted. Uniroyal argues that the stricken portion of Heyer's declaration was inadmissible as substantive evidence because that portion was not based on Heyer's personal knowledge.
¶ 28 ER 703 permits experts to base their opinion testimony on facts or data that is not admissible in evidence "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject[.]" The otherwise inadmissible facts or data underlying an expert's opinion is admissible for the limited purpose of explaining the basis for an expert's opinion, but is not substantive evidence. See In re Det. of Marshall, 122 Wash.App. 132, 146, 90 P.3d 1081 (2004), aff'd, 156 Wash.2d 150, 125 P.3d 111 (2005).
The trial court may allow the admission of otherwise hearsay evidence and inadmissible facts for the purpose of showing the basis of the expert's opinion. State v. Wineberg, 74 Wash.2d 372, 384, 444 P.2d 787 (1968). The admission of these facts, however, is not proof of them.
[I]f an expert states the ground upon which his opinion is based, his explanation is not proof of the facts which he says he took into consideration: Wigmore on Evidence, 3rd ed. § 655. His explanation merely discloses the basis of his opinion in substantially the same manner as if he had answered a hypothetical question. It is an illustration of the kind of evidence which can serve multiple purposes and is admitted for a single, limited purpose only.

Wineberg, at 382, 444 P.2d 787 (quoting State Hwy. Comm'n v. Parker, 225 Or. 143, 160, 357 P.2d 548 (1960)).
Group Health Coop. of Puget Sound, Inc. v. Dep't of Revenue, 106 Wash.2d 391, 399-400, 722 P.2d 787 (1986).
¶ 29 The trial court admitted paragraphs 7 through 9 of Heyer's declaration for the limited purpose of explaining Heyer's expert opinion only, but struck the paragraphs as substantive evidence of Allen's father's exposure to Uniroyal products because Heyer had no personal knowledge of that exposure. Heyer was qualified only to testify about the medical effect that asbestos had on Allen, assuming Allen's father was exposed to Uniroyal products at the shipyard. The court made it clear that those paragraphs were struck as substantive evidence of exposure and were admissible only for the limited purpose of explaining the bases of Heyer's expert opinion.
¶ 30 The stricken portion of Heyer's declaration reads:
7. Based on the above materials as well as my training experience and literature that I have read, it is my opinion that asbestos was a cause of Mr. Allen's lung cancer and that part of that asbestos exposure resulted from exposure to asbestos *414 cloth manufactured by United States Rubber Company, including "Asbeston" cloth used at PSNS in the 1950's and 1960's. Dust from such cloth as well as from other sources of asbestos was widely distributed and was part of the asbestos to which workers such as Mr. Ernest Allen was exposed and which were brought home on his clothes.
8. Arriving at my opinions about the use at PSNS of asbestos cloth made by United States Rubber Company, I relied in part on the July 17, 1958, letter from the United States Rubber Company to PSNS. That letter describes its product, "asbeston," as a lightweight lagging cloth. I also relied in part on PSNS records dated in 1959 and 1960 regarding the use of "asbeston" or "asbeston or equal" at PSNS. I also considered Mr. D'Angleo's testimony about sales to PSNS of asbestos cloth from 1958 through 1960. I also relied on testimony from Mr. Tefft and Mr. Anderson, who referred to using lightweight asbestos cloth called asbeston or asbestone at PSNS for lagging pipes abroad [sic] ship in the years around 1960. John Northey, another PSNS insulator, also referred to using asbeston cloth at PSNS during the 1950s.
9. In my opinion, Gary Allen was substantially exposed to asbestos as a result of asbestos being brought home on his father's work clothes when his father was working as a lagger at PSNS in Bremerton, Washington. This exposure was more likely than not sufficient to cause Gary Allen's lung cancer. That exposure would have been in part from the asbestos being put into the air from the shipyard workers cutting and tearing the Asbeston cloth. . . .
¶ 31 Although Allen correctly asserts that Heyer, as an expert, was entitled to rely on inadmissible evidence to form an opinion, that fact is unrelated to the reason that paragraphs 7 through 9 were stricken. The court, in striking those paragraphs, emphasized that the paragraphs were being struck as substantive evidence that Uniroyal products were used by Allen's father at the shipyard: "Heyer's testimony may not be offered to prove the presence of Uniroyal's product at PSNS." This limited admissibility is consistent with Marshall, 122 Wash.App. at 146, 90 P.3d 1081, and Group Health, 106 Wash.2d at 399-400, 722 P.2d 787. The trial court excluded the testimony of Hugh Tefft, Monty Anderson, and John Northeythe shipyard workers who testified about using Uniroyal productsand Heyer's reference to this excluded testimony cannot be considered substantive evidence establishing the use of Uniroyal products at the shipyard.
¶ 32 We conclude that the trial court did not err in striking a portion of Heyer's declaration because paragraphs 7 through 9 contain Heyer's opinion about factual matters outside his industrial hygiene and epidemiology expertisenamely, whether Uniroyal products were present or used at PSNS. The stricken portion is admissible only for the limited purpose of explaining the basis for Heyer's medical opinion. Thus, we conclude that the trial court properly excluded that portion of Heyer's opinion as substantive evidence.[5]
¶ 33 For the foregoing reasons, we reverse and remand for trial.
WE CONCUR: SCHINDLER, A.C.J., and BAKER, J.
NOTES
[1] Although the product at issue was manufactured by the United States Rubber Company, we refer to this product as a Uniroyal product or by its brand name, "Asbeston," in this opinion.
[2] Allen cites other cases where sales records have supported an inference of exposure. In those cases, there was also additional evidence, usually in the form of testimony from the plaintiff or other co-workers identifying the asbestos product and describing its use at the workplace. See Covalt v. Carey Canada, Inc., 950 F.2d 481 (7th Cir.1991); Zielinski v. A.P. Green Indus., 263 Wis.2d 294, 661 N.W.2d 491 (2003); Thacker v. UNR Indus., Inc., 213 Ill.App.3d 38, 572 N.E.2d 341, 157 Ill.Dec. 272 (1991); Rocco v. Johns-Manville Corp., 754 F.2d 110 (3 Cir. 1985). Because such additional evidence was not present in this record, we do not consider these cases to be analogous here.
[3] Uniroyal also argues that summary judgment was appropriate on the ground that Allen presented insufficient evidence that he inhaled asbestos dust from his father's clothes, particularly because there was insufficient evidence that any dust would have been from a Uniroyal product. But Allen testified in a deposition that he carried his father's work clothes home from the bus stop and stood nearby while his father shook dust off of them, and Allen's expert opined that this exposure was more likely than not a substantial factor causing Allen's cancer. Given that we conclude that the evidence supports a reasonable inference that Allen's father was exposed to Uniroyal products, Allen's deposition and expert testimony raise a genuine issue of material fact as to whether Uniroyal products were a substantial factor causing Allen's cancer. Therefore, this is not an appropriate ground for summary judgment.
[4] Allen does not rebut this argument in his reply brief; in fact, his reply brief does not mention this deposition at all.
[5] Allen also assigns error to the trial court's exclusion of exhibit 17, but presented no argument in either his opening brief or his reply brief to support the assignment of error. We consider this assignment of error abandoned because it is not developed in the briefs. Bercier v. Kiga, 127 Wash.App. 809, 824, 103 P.3d 232 (2004) ("[W]ithout argument or authority to support it, an appellant waives an assignment of error.").