# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

MICHAEL FARROW and LIDIA
FARROW,

      Appellants,

    v.

ALFA LAVAL, INC. (sued individually
and as successor-in-interest to THE
DELAVAL SEPARATOR COMPANY
and SHARPLES CORPORATION);
ANCHOR/DARLING VALVE
COMPANY; AURORA PUMP
COMPANY; BEAIRD COMPANY;
BUFFALO PUMPS, INC. (sued
individually and as successor-in-
interest to BUFFALO FORGE
COMPANY); BW/IP INTERNATIONAL,
INC. (sued individually and as
successor-in-interest to BYRON
JACKSON PUMP COMPANY);
CAMERON INTERNATIONAL
CORPORATION f/k/a COOPER
CAMERON CORPORATION (sued
individually and as successor-in-interest
to COOPER-BESSEMER
CORPORATION); CARRIER
CORPORATION; CLA-VAL CO.;
CLEAVER-BROOKS, INC. f/k/a AQUA-
CHEM, INC. d/b/a CLEAVER-BROOKS
DIVISION (sued individually and as
successor-in-interest to DAVIS
ENGINEERING COMPANY); COLTEC
INDUSTRIES, INC. (sued individually
and as successor-in-interest to

No. 69917-2-I

DIVISION ONE

PUBLISHED IN PART OPINION

COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 MAR -3 AM 9:28

FAIRBANKS MORSE ENGINE); )
CRANE CO. (sued individually and as )
successor-in-interest to COCHRANE )
CORPORATION and CHAPMAN )
VALVE CO.); CRANE )
ENVIRONMENTAL, INC. (sued )
individually and as successor-in-interest )
to COCHRANE CORPORATION); )
CROSBY VALVE, INC.; EATON )
HYDRAULICS, INC. (sued individually )
and as successor-in-interest to )
VICKERS INC.); ELLIOTT )
TURBOMACHINERY COMPANY a/k/a )
ELLIOTT COMPANY; E.J. BARTELLS )
SETTLEMENT TRUST; FAIRBANKS )
MORSE PUMP CORPORATION; FMC )
CORPORATION (sued individually and )
as successor-in-interest to PEERLESS )
PUMP COMPANY); FRYER- )
KNOWLES, INC.; FRYER-KNOWLES, )
INC., a Washington corporation; )
GARLOCK SEALING )
TECHNOLOGIES, L.L.C. (sued )
individually and as successor-in- )
interest to GARLOCK, INC.); GENERAL )
MOTORS CORPORATION (sued )
individually and as successor-in-interest )
to HARRISON THERMAL SYSTEM and )
HARRISON RADIATOR); GOULDS )
PUMPS, INC.; HARDIE-TYNES, L.L.C. )
(sued individually and as successor-in- )
interest to HARDIE-TYNES )
MANUFACTURING COMPANY); )
HARDIE-TYNES MANUFACTURING )
COMPANY; HOKE INCORPORATED; )
HOPEMAN BROTHERS, INC.; )
HOPEMAN BROTHERS MARINE )
INTERIORS, L.L.C. a/k/a HOPEMAN )
BROTHERS, INC.; IMO INDUSTRIES, )
INC. (sued individually and as )
successor-in-interest to DELAVAL )
TURBINE, INC. and C.H. WHEELER); )
ITT INDUSTRIES, INC. (sued )
individually and as successor-in- )
interest to BELL & GOSSETT, )
KENNEDY VALVE MANUFACTURING )

2

CO., KENNEDY VALVE, INC. and )
KENNEDY VALVE CO); INVENSYS )
SYSTEMS, INC. (sued individually and )
as successor-in-interest to EDWARD )
VALVE & MANUFACTURING); J.T. )
THORPE & SON, INC.; JOHN CRANE, )
INC.; LESLIE CONTROLS, INC.; M. )
SLAYEN AND ASSOCIATES, INC.; )
MCWANE INC. (sued individually and )
as successor-in-interest to KENNEDY )
VALVE MANUFACTURING COMPANY, )
KENNEDY VALVE INC. and KENNEDY )
VALVE COMPANY); METALCLAD )
INSULATION CORPORATION; )
METROPOLITAN LIFE INSURANCE )
COMPANY; PLANT INSULATION )
COMPANY; RAPID-AMERICAN )
CORPORATION (sued as successor-in- )
interest to PHILIP CAREY )
MANUFACTURING CORPORATION); )
SB DECKING, INC. f/k/a SELBY )
BATTERSBY & CO.; SEPCO )
CORPORATION; STERLING FLUID )
SYSTEMS, INC. f/k/a PEERLESS )
PUMPS CO; SYD CARPENTER, )
MARINE CONTRACTOR, INC.; )
THOMAS DEE ENGINEERING CO., )
INC.; TRIPLE A MACHINE SHOP, INC.; )
TYCO FLOW CONTROL, INC. (sued )
individually and as successor-in-interest )
to THE LUNKENHEIMER COMPANY, )
and HANCOCK VALVES); WARREN )
PUMPS, L.L.C. (sued individually and )
successor-in-interest to QUIMBY )
PUMP COMPANY); WEIR VALVES & )
CONTROLS USA, INC. f/k/a )
ATWOOD & MORRILL; THE WILLIAM )
POWELL COMPANY; YARWAY )
CORPORATION; and DOES 1-450 )
INCLUSIVE, )
)
                     Defendants, )
)
FLOWSERVE US INC. (sued )
individually and as successor-in- )
interest to DURCO INTERNATIONAL, )

3

No. 69917-2-I/4

BYRON JACKSON PUMP COMPANY, )
ALDRICH and EDWARD VALVE & )
MANUFACTURING), )
)
Respondents. )       FILED:  March 3, 2014
_____ )

DWYER, J. — Michael Farrow died in 2008 as a result of contracting mesothelioma.  Prior to his death, he and his wife, Lidia Farrow, filed a lawsuit against a number of defendants, including Flowserve US Inc., who they sued individually and as successor-in-interest to Edward Valves, Inc. (EVI).  The Farrows alleged that Michael had contracted mesothelioma as a result of being exposed to asbestos-containing products while working at the Puget Sound Naval Shipyard (PSNS) over the span of two decades.  Melvin Wortman, a superintendent at the PSNS during part of Farrow's tenure, was deposed in a different lawsuit, and subsequently died before Farrow's case could be heard.  Initially, the trial court allowed Farrow to offer Wortman's testimony, over EVI's hearsay objection, pursuant to the "predecessor in interest" exception of ER 804(b)(1).[1]  However, after excluding Wortman's testimony as to several other defendants, the trial court reversed course and excluded his testimony in this case, leading to its grant of Flowserve's motion for summary judgment.  The trial court erred in making the latter rulings.  Accordingly, we reverse and remand for further proceedings.

_____
[1]        **(b) Hearsay Exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
            (1) *Former Testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.
ER 804.

4

I

Farrow worked at the PSNS as a pipefitter from 1953 to 1962 and in the design shop from 1963 to 1974. As part of his work in both positions, he spent a significant amount of time aboard ships installing and repairing valves, removing and replacing packing material around the valves' stems, and removing and replacing flange gaskets. One brand of valve that Farrow worked on and around "many times" was the Edward valve. Farrow removed insulation pads from Edward valves, removed flange gaskets from and fabricated flange gaskets on Edward valves, and removed packing from Edward valves and replaced the old packing with new packing. When Farrow or others nearby removed insulation from Edward valves, the air would be dusty and Farrow would breathe that dust. When Farrow or others nearby would remove gaskets from Edward valves, the air would be dusty and Farrow would breathe that dust. When Farrow or others nearby would fabricate gaskets on Edward valves, the air would be dusty and Farrow would breathe that dust. When Farrow or others nearby would remove old packing from Edward valves, it would very often be dusty and Farrow would breathe that dust. When Farrow or others nearby would replace old packing with new packing, it would be dusty and Farrow would breathe that dust.

Melvin Wortman was a superintendent of machinists at the PSNS from approximately 1968 until 1976. Although Wortman is now deceased, he is significant in this case because of deposition testimony he gave in a previous King County Superior Court case: Nelson v. Buffalo Pumps, Inc., No. 08-2-17324-1 SEA. Wortman testified that because the Navy and the PSNS were

focused on increasing their quality control during the time when he was superintendent, "there was a great increase in going to the original vendor for repair parts." He testified that in later years approximately 50 percent of the replacement parts obtained for the PSNS were procured from original manufacturers.[2] Wortman's deposition in the Nelson case was taken over a three-day period, during which time questions were asked by attorneys for defendants Crane Co., Buffalo Pumps, Ingersol Rand, and Warren Pumps, and by attorneys for the plaintiffs. Buffalo Pumps manufactured pumps, whereas Crane Co., manufactured valves, and both of these defendants' products were on ships repaired at the PSNS. See Braaten v. Saberhagen Holdings, 137 Wn. App. 32, 37, 151 P.3d 1010 (2007), rev'd 165 Wn.2d 373, 394-95, 198 P.3d 493 (2008).

Flowserve's CR 30(b)(6)[3] witness in this case, James Tucker, testified that EVI began manufacturing valves containing asbestos in the 1930s; that EVI manufactured valves that contained asbestos at the time the valves left the factory; that the asbestos contained in Edward valves at the time they left the factory for installation included both packing and gaskets; and, that Edward valves were designed to contain asbestos until 1985. He also testified that EVI supplied replacement asbestos gaskets with new valves that already incorporated an original asbestos gasket; that EVI also separately sold replacement asbestos gaskets, including sheet gasket material; and, that EVI sold replacement asbestos packing separately as well. Although Tucker

---

[2] However, Wortman testified that he was not familiar with Edward valves.
[3] This rule allows a corporation to designate a witness to testify on its behalf.

admitted that EVI sold original and replacement packing, he testified that EVI never manufactured, distributed, or sold any external insulation or flange gaskets. Additionally, Tucker testified that he was unaware of any sales of replacement packing to the Navy and that, in preparing to testify as a CR 30(b)(6) witness, he had found no company records indicating otherwise.

Flowserve moved for summary judgment on June 28, 2012. During oral argument, and in connection with the issue of the admissibility of Wortman's testimony, Flowserve's counsel, Randy Aliment—who was not present at Wortman's deposition[4]—admitted that he would not have asked Wortman additional questions had he been present. The trial court, relying in part on attorney Aliment's assertion that he would not have asked Wortman additional questions had he been present, ruled that Wortman's deposition testimony was admissible pursuant to ER 804(b)(1) and denied Flowserve's motion for summary judgment. The court explained its ruling on the admissibility of Wortman's testimony, in pertinent part, as follows:

> It is telling, indeed, that had Mr. Aliment been there or a representative from EVI, that they would not have asked any other questions because, let's face it, once you have testimony that, "No, Edwards Valve is not familiar with me, to me," I don't know any attorney who would ask any further questions at that point. In fact, it would probably be malpractice to ask any further questions at that point.
> . . .
> So if someone had been there, they would not have asked any other questions other than those questions which were asked by other counsel, and those other counsel had similar interests, not identical interests, but similar interests to EVI's counsel. And – and to the extent their interests were identical, those questions were asked. I can't imagine any additional benefit to EVI had counsel been present than existed – than occurred during the deposition.

---

[4] Neither Flowserve nor EVI was a party to the case in which Wortman was deposed.

Several months later, in support of their separate motions for summary judgment against Farrow, a number of other defendants filed motions to exclude or strike Wortman's testimony. Several defendants, including Alfa Laval, opposed the admission of Wortman's deposition based upon ER 804(b)(1) and the King County Asbestos Order (KCAO), an order applying to all asbestos cases filed in the King County Superior Court. With respect to ER 804(b)(1), Alfa Laval contended that the deposition could be admitted only "when a party or its predecessor [in] interest has had an opportunity to cross-examine the witness, at the original deposition or subsequently." With respect to the KCAO, Alfa Laval contended that because the plaintiffs failed to follow the procedure dictated by the KCAO—requiring parties to give notice to parties against whom the deposition may subsequently be used—the plaintiffs were precluded from seeking admission of the deposition testimony, notwithstanding the provisions of ER 804(b)(1). The KCAO states, in pertinent part:

> 5.6 Depositions, generally
>
> . . .
>
> d. Pre-Deposition Statement In order to minimize time, travel expenses, and surprise to counsel or parties who may not desire to attend all depositions, there shall be attached to each notice of deposition a statement containing the following information (except depositions of individual plaintiffs).
>
> . . .
>
> (7) That any party intending to use a deposition as a "Style" deposition, or to use it in certain other trials, shall serve the pre-deposition statement described in this Section (d) as well as a notice of "Style" deposition and/or a notice of deposition for said other trials, upon counsel for all parties who are intended to be bound thereby.

On December 13, 2012, the trial court issued a written order granting Alfa Laval's

8

motion to strike Wortman's deposition testimony "as to those moving/joining defendants who were not notified of and who did [not] have counsel at the Wortman . . . deposition."

On December 26, 2012, Flowserve filed a second summary judgment motion, asserting that the "law of the case" doctrine and judicial economy compelled a grant of summary judgment in its favor. During the second summary judgment hearing, attorney Aliment stated that although—as he indicated during the first summary judgment hearing—he would not have asked additional product identification questions of Wortman, "there were a number of questions that could have/should have been asked by competent counsel about the replacement part issue, which became central to his testimony." The trial court then reversed its prior ruling, excluded Wortman's deposition testimony, and granted Flowserve's motion for summary judgment. The court provided the following explanation for its rulings:

> Now, Mr. Aliment I think was a little bit caught off guard I think when the Court last July asked him some questions relating to questions he would have asked at the Wortman deposition, and – but I do take his statements at face value, and he was really addressing whether – as we have discussed it, whether the – whether he would have gilded the lily in terms of the Wortman deposition had he been present or had been given notice. And I think that's absolutely true.
>
> . . .
>
> But Mr. Aliment's renewed motion for summary judgment is not only as he's renewed it, but he's basically saying, "Give me summary judgment for the same reason you gave Ms. Dinsdale,"[5] and the basis for Ms. Dinsdale's motion was, number one, defects in the case law and, number two, defects in the style order local rules.
>
> So, long story short, the motion to strike the Wortman

---

[5] Counsel for a different defendant.

9

deposition is granted. That – that the motion being granted, there are no genuine issues of material fact remaining. It is the Plaintiff's burden to prove – demonstrate some admissible evidence establishing causation. Even though all inferences are in favor of the non-moving party, the – the Plaintiff must still come forward with some admissible evidence establishing the elements of their cause of action, and they have failed to do so in this particular case now that the Wortman deposition has been stricken. Therefore, I will grant both motions by Mr. Aliment.

Farrow appeals from the trial court's grant of Flowserve's motion to strike Wortman's deposition testimony and from its grant of summary judgment in favor of Flowserve.

II

Farrow contends that the trial court erred by excluding Wortman's deposition testimony as inadmissible hearsay. This is so, Farrow asserts, because certain defendants in the case in which Wortman was deposed were predecessors in interest to Flowserve within the meaning ascribed by ER 804(b)(1). We agree.

"We review de novo a trial court ruling on a motion to strike evidence made in conjunction with a summary judgment motion." Rice v. Offshore Sys., Inc., 167 Wn. App. 77, 85, 272 P.3d 865, review denied, 174 Wn.2d 1016 (2012); accord Parks v. Fink, 173 Wn. App. 366, 375, 293 P.3d 1275 ("We review the admissibility of evidence in summary judgment proceedings de novo." (citing Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998))), review denied, 177 Wn.2d 1025 (2013).

Division Three recently examined how the "predecessor in interest"

exception of ER 804(b)(1)[6] has been interpreted by federal courts and by

Washington state courts, concluding that both have interpreted the exception

broadly, focusing on opportunity and similar motive.

> Indeed, the courts have dispensed with any technical and narrow definition of the term and instead examine whether the party against whom the evidence was previously offered had an opportunity and similar motive to develop and challenge the testimony by cross-examination. *So a previous party having like motive to develop the testimony by cross-examination about the same matter is a predecessor in interest to the present party for purposes of this rule.*

Acord v. Pettit, 174 Wn. App. 95, 105, 302 P.3d 1265 (emphasis added), review

denied, 178 Wn.2d 1005 (2013). Although the Acord court's assessment of

federal court interpretations was accurate, its review of Washington court

interpretations was not: specifically, it was mistaken that Washington courts had

earlier held that a previous party with a like motive to develop testimony by cross-

examination about the same matter was considered a predecessor in interest to

the present party. In support of its erroneous conclusion, the Acord court cited

two Washington cases, neither of which supported the proposition for which it

was cited. The first of these cases did not explain who may constitute a

predecessor in interest. Instead, it merely reiterated that which ER 804(b)(1)

already states: "the predecessor in interest exception requires the predecessor to

have the opportunity to examine the witness." Allen v. Asbestos Corp., 138 Wn.

App. 564, 578-79, 157 P.3d 406 (2007). The second decision also did not

determine who it was that might constitute a predecessor in interest. Instead, it

---

[6] ER 804(b)(1) is identical to Fed. R. Evid. 804(b)(1). State v. DeSantiago, 149 Wn.2d 402, 414, 68 P.3d 1065 (2003).

addressed whether, assuming that the testimony at issue was already admissible pursuant to ER 804(b)(1), the rule allowed only the proponent of the testimony at the former proceeding to introduce the testimony at the subsequent proceeding. State v. Whisler, 61 Wn. App 126, 135, 810 P.2d 540 (1991).

Nevertheless, the Acord court correctly concluded that federal courts have held that a previous party with a like motive and an opportunity to develop testimony by cross-examination about the same matter is a predecessor in interest to the current party. Indeed, the Third, Fourth, Sixth, Eighth, and Tenth circuits all look to whether the former party had a similar motive and an opportunity to develop testimony through cross-examination in determining whether the former party is a predecessor in interest to the latter within the meaning of the rule. See Horne v. Owens-Corning Fiberglas Corp., 4 F.3d 276, 282 (4th Cir. 1993); O'Banion v. Owens-Corning Fiberglas Corp., 968 F.2d 1011, 1015 (10th Cir. 1992); Azalea Fleet, Inc. v. Dreyfus Supply & Mach. Corp., 782 F.2d 1455, 1461 (8th Cir. 1986); Clay v. Johns-Manville Sales Corp., 722 F.2d 1289, 1294-95 (6th Cir. 1983); Lloyd v. Am. Exp. Lines, Inc., 580 F.2d 1179, 1187 (3d Cir. 1978).[7]

"Washington courts treat as persuasive authority federal decisions interpreting the federal counterparts of our own court rules." Young v. Key Pharm., Inc., 112 Wn.2d 216, 226, 770 P.2d 182 (1989); accord State v. DeSantiago, 149 Wn.2d 402, 414, 68 P.3d 1065 (2003). Moreover, our Supreme

---

[7] Many of the federal cases interpreting the language of ER 804(b)(1) are asbestos cases. Although it is not surprising that the admissibility of deposition testimony from since-deceased witnesses is a recurring issue in asbestos cases, given that asbestos-related diseases have a long latency period between exposure and manifestation of the disease, it does underscore the critical nature of the evidentiary question presented in this appeal.

Court, in the absence of prior state interpretation, has been willing to adopt federal interpretations of evidentiary rules where the rules are identical. State v. Land, 121 Wn.2d 494, 498-500, 851 P.2d 678 (1993); State v. Terrovona, 105 Wn.2d 632, 639-41, 716 P.2d 295 (1986); accord Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co., 122 Wn. App. 736, 748, 87 P.3d 774 (2004). Extensive, uniform federal authority interpreting ER 804(b)(1) exists without conflicting precedent in any federal or Washington appellate court. Recognizing that this persuasive authority is extensive and uniform and exists without conflicting precedent in Washington, we adhere to the federal court interpretation of the predecessor in interest language of ER 804(b)(1).

When opposing admission of evidence pursuant to ER 804(b)(1), counsel must "explain as clearly as possible . . . why the motive and opportunity of the defendants in the first case was not adequate to develop the cross-examination which the instant defendant would have presented to the witness." Dykes v. Raymark Indus., Inc., 801 F.2d 810, 817 (6th Cir. 1986); O'Banion, 968 F.2d at 1015 n.4. In United States v. DiNapoli, 8 F.3d 909 (2d Cir. 1993), the court was not persuaded "by the Government's contention that the absence of similar motive is conclusively demonstrated by the availability at the grand jury of some cross-examination opportunities that were forgone." DiNapoli, 8 F.3d at 914. In explaining why it was not persuaded, the court noted that, "[i]n virtually all subsequent proceedings, examiners will be able to suggest lines of questioning that were not pursued at a prior proceeding." DiNapoli, 8 F.3d at 914; cf. Dykes, 801 F.2d at 817 ("[W]e would have been much more impressed with the

defense's objections had they articulated before the trial court in the first instance, and later before us, precisely what lines of questioning they would have pursued.").

During the second summary judgment hearing, attorney Aliment asserted that he would not have asked additional product identification questions, but that competent counsel should have asked additional questions about Wortman's testimony related to obtaining replacement parts from the original manufacturers. On appeal, Flowserve asserts that the defendants in Nelson did not have a similar motive to Flowserve because (1) none of the other equipment manufacturers had a motive to discredit Wortman as a witness whose testimony might show that EVI in particular supplied replacement parts to the Navy and, (2) in fact, each manufacturer hoped to spread liability to as many parties as possible. These assertions are unavailing.

All of the manufacturers were interested in discrediting Wortman's testimony, which supported Farrow's position that if he worked with or around valves at PSNS that were being repaired or replaced during a period of years in the 1960s and 1970s, he would likely have been exposed to new and replacement asbestos-containing insulation, gaskets, and packing supplied to the PSNS by the manufacturers during that time period. Furthermore, although each manufacturer may have hoped to spread liability to as many parties as possible if their respective defenses failed, that fact would not extinguish the shared motive of discrediting Wortman's testimony so that no manufacturer would be held liable. Accordingly, we conclude that certain defendants present at Wortman's

deposition had an opportunity and a similar motive to Flowserve to develop

Wortman's deposition testimony. Therefore, Wortman's deposition testimony

does not constitute hearsay pursuant to the predecessor in interest exception of

ER 804(b)(1). To the extent that it was excluded as hearsay, the trial court

erred.[8]

The remainder of this opinion has no precedential value. It will, therefore,

be filed for public record in accordance with the rules governing unpublished

opinions.

### III

Farrow next contends that the trial court erred by granting summary

judgment in favor of Flowserve. This is so, Farrow asserts, because Wortman's

deposition testimony, considered along with Tucker's and Farrow's testimony,

creates genuine issues of material fact. We agree.

"This court's review of orders granting or denying summary judgment is de

novo, and we engage in the same inquiry as the trial court." Rafel Law Grp.

PLLC v. Defoor, 176 Wn. App. 210, 218, 308 P.3d 767 (2013), review denied,

---

[8] During oral argument, Flowserve's counsel stated that Farrow's purported failure to comply with the KCAO did not present an independent ground for affirmance and that Flowserve was not asserting that it did. To the extent that Flowserve's briefing could be construed to contradict counsel's statement, we rely on counsel's concession that Flowserve does not view the question of Farrow's compliance with the KCAO as an independent ground for affirmance. However, even absent counsel's concession, it is clear that a violation of the KCAO would not present an independent ground for affirmance. This is so because the trial court failed to consider the factors required by Burnet v. Spokane Ambulance, 131 Wn.2d 484, 933 P.2d 1036 (1997), on the record before excluding Wortman's testimony, as is mandated by Jones v. City of Seattle, __ Wn.2d __, 314 P.3d 380, 391 (2013).
Moreover, even if the trial court had considered the Burnet factors, there is no evidence in the record that Farrow *willfully* violated the KCAO. Thus, the trial court could not have properly excluded the testimony. Jones disavowed the usual presumption that violating a rule constitutes a willful act, holding instead that willfulness must be demonstrated. Jones, 314 P.3d at 391. In holding that merely violating a rule does not equate to a willful violation, Jones was unequivocal: "Something more [than a violation of a discovery order] is needed." Jones, 314 P.3d at 391.

316 P.3d 495 (2014). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

> Asbestos plaintiffs in Washington may establish exposure to a defendant's product through direct or circumstantial evidence. [Allen v. Asbestos Corp., Ltd., 138 Wn. App. 564, 571, 157 P.3d 406 (2007).] A plaintiff need not offer a detailed recollection of facts surrounding the exposure to the asbestos-containing product. [Morgan v. Aurora Pump Co., 159 Wn. App. 724, 729, 248 P.3d 1052 (2011).] "'[I]nstead of personally identifying the manufacturers of asbestos products to which he was exposed, a plaintiff may rely on the testimony of witnesses who identify manufacturers of asbestos products which were then present at his workplace.'" [Morgan, 159 Wn. App. at 729 (alteration in original) (quoting Lockwood v. AC & S, Inc., 109 Wn.2d 235, 246-47, 744 P.2d 605 (1987))].

Montaney v. J-M Mfg. Co., __ Wn. App. __, 314 P.3d 1144, 1145-46 (2013). However, the plaintiff must produce evidence that he or she was harmed by exposure to asbestos material that the defendant placed in the stream of commerce. Braaten v. Saberhagen Holdings, 165 Wn.2d 373, 383-93, 198 P.3d 493 (2008); Simonetta v. Viad Corp., 165 Wn.2d 341, 350-63, 197 P.3d 127 (2008). Thus, summary judgment is not appropriate where evidence demonstrates "that [the plaintiff] worked around materials that created asbestos dust aboard ships, that certain brands of asbestos-containing products were commonly used on ships repaired at [the plaintiff's] workplace, and the defendant distributed those specific brands of products to the plaintiff's employer." Montaney, 314 P.3d at 1146 (citing Berry v. Crown Cork & Seal Co., 103 Wn. App. 312, 315-18, 14 P.3d 789 (2000)). We review asbestos cases with an awareness of the proof problems inherent in cases of this type.

16

"Because of the long latency period of asbestosis, the plaintiff's ability to recall specific brands by the time he brings an action will be seriously impaired. A plaintiff who did not work directly with the asbestos products would have further difficulties in personally identifying the manufacturers of such products. The problems of identification are even greater when the plaintiff has been exposed at more than one job site and to more than one manufacturer's product."

Montaney, 314 P.3d at 1146 (quoting Lockwood, 109 Wn.2d at 246-47).

As in Montaney, Farrow presented evidence that (1) he worked on and around Edward valves that created asbestos dust, which he breathed during the several decades in which he worked as a pipefitter and in the design shop at the PSNS; (2) he worked on or around Edward valves many times; and (3) EVI placed into the stream of commerce asbestos-containing products used at the PSNS. Although Tucker, EVI's CR 30(b)(6) witness, testified that EVI never manufactured, distributed, or sold any external insulation or flange gaskets, he admitted that EVI sold original and replacement packing. This evidence that EVI sold original and replacement packing—coupled with Farrow's testimony that he removed and replaced packing from Edward valves, and Wortman's testimony that the majority of replacement parts at the PSNS in later years were procured from the original manufacturer—could allow a trier of fact to reasonably infer that EVI placed asbestos-containing materials into the stream of commerce, which resulted in Farrow working on or around those products. This evidence is sufficient to survive summary judgment. Accordingly, the trial court erred by ruling to the contrary.

Reversed and remanded.

We concur: