# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

THOMAS G. MONTANEY and                    )        No. 69364-6-I
MARJORIE E. MONTANEY, husband             )
and wife,                                 )
                                          )
                    Appellants,           )
                                          )
        v.                                )
                                          )
J-M MANUFACTURING COMPANY,                )
INC.,                                     )
                                          )
                    Respondent,           )
                                          )
CERTAINTEED CORPORATION;                  )
CBS CORPORATION, a Delaware               )
corporation, f/k/a Viacom, Inc.,          )
successor by merger to CBS                )
Corporation, a Pennsylvania               )
corporation, f/k/a Westinghouse           )
Electric Corporation; H.D. FOWLER         )
CO., INC.; HONEYWELL                      )        PUBLISHED OPINION
INTERNATIONAL, INC., successor-           )
in-interest to Allied Signal, Inc.,       )        FILED: December 23, 2013
successor-in-interest to Bendix Corp.,    )
METROPOLITAN LIFE INSURANCE               )
COMPANY; UNION CARBIDE                    )
CORPORATION; WATER                        )
APPLICATIONS DISTRIBUTION                 )
GROUP, INC., formerly known as            )
U.S. Filter Distribution Group, Inc.,     )
as successor-by-merger to Pacific         )
Water Works Supply Co., Inc.; and         )
WUSCO,INC., doing business as             )
Western Utilities Supply Co.,             )
                                          )
                    Defendants.           )
_____)

VERELLEN, J. — The trial court granted summary judgment dismissing Thomas and Marjorie Montaney's claim against J-M Manufacturing (JMM) arising from Thomas's exposure to asbestos from pipe JMM sold. At the summary judgment hearing, evidence was presented that (1) Thomas Montaney was repeatedly exposed to asbestos dust while working with asbestos concrete (A/C) pipe between 1972 and 1990; (2) he purchased A/C pipe from a single distributor, Pacific Water Works (Pacific) into the 1980s; and (3) Pacific carried A/C pipe sold by JMM in 1983 and 1984. This evidence is sufficient for a jury to reasonably infer that Montaney was exposed to A/C pipe sold by JMM. We reverse.

## FACTS

In 2012, Thomas Montaney died of mesothelioma. Before his death, he and his wife filed an asbestos products liability lawsuit against nine defendants, including JMM.

Beginning in 1972, Montaney continually worked with A/C pipe in his career with the Cedar River Water and Sewer District.[1] Montaney repaired and maintained A/C water and sewer pipe in the water district's system. This required him to cut and bevel previously installed A/C pipe, and to fit new pipe to replace damaged sections. Cutting the old and new pipe generated substantial airborne asbestos dust. Although he stopped using new A/C pipe in approximately 1990 after learning of the risks, he cut or machined A/C pipe routinely, approximately 10 times per month between 1972 and about 1990.

---

[1] Montaney was exposed to asbestos dust throughout his life, including as a child when his father worked with asbestos. He was also exposed to asbestos while working in shipyards in the 1960s. However, his most intense exposure came from his work with A/C pipe while employed with the water district.

Johns-Manville manufactured A/C "Transite" pipe for decades before it sold its pipe manufacturing operations in December 1982. JMM purchased Johns-Manville's PVC[2] pipe manufacturing business, while J-M A/C Pipe Corporation purchased Johns-Manville's A/C pipe manufacturing business.

JMM acknowledges that it sold A/C pipe under the trade name J-M Transite from January 1, 1983 until 1988. JMM conceded at oral argument that it may have sold the existing Johns-Manville A/C Transite pipe in stock as of January 1983, as well as A/C pipe manufactured by J-M A/C Pipe Corporation after January 1983. Pacific sold A/C pipe distributed by JMM.[3]

Montaney was responsible for selecting and purchasing replacement pipe and supplies. He only had two sources for pipe. He either obtained leftovers from contractors or purchased new pipe, exclusively from Pacific. Montaney explained in his deposition that he only purchased or used A/C pipe made by two manufacturers, Johns-Manville and Certainteed. Montaney also testified that the water district kept an inventory of A/C pipe for repair jobs. Montaney's coworker Kirk Hunkeler confirmed in his deposition that the A/C pipe in the water district's inventory was all either Johns-Manville or Certainteed pipe.

JMM successfully moved for summary judgment dismissing Montaney's claim.[4] Mary Montaney appeals.

---

[2] Polyvinyl chloride.

[3] Pacific's vice president of operations during the 1980s, William Davis, testified in earlier trial proceedings that Pacific did business with almost all the water districts from the Canadian border to Medford, Oregon, a territory that includes the Cedar River Water and Sewer District.

[4] Montaney's estate settled with the other defendants prior to trial.

## ANALYSIS

"Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."[5] This court reviews a summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party.[6]

Asbestos plaintiffs in Washington may establish exposure to a defendant's product through direct or circumstantial evidence.[7] A plaintiff need not offer a detailed recollection of facts surrounding the exposure to the asbestos-containing product.[8] "'[I]nstead of personally identifying the manufacturers of asbestos products to which he was exposed, a plaintiff may rely on the testimony of witnesses who identify manufacturers of asbestos products which were then present at his workplace.'"[9] Whether an asbestos plaintiff's evidence states a prima facie case is necessarily a fact-specific inquiry.[10]

In Lockwood v. AC & S, Inc., our Supreme Court held that evidence supplied by the plaintiff's coworkers supported the inference that the defendant's product was used

---

[5] Cerrillo v. Esparza, 158 Wn.2d 194, 200, 142 P.3d 155 (2006).

[6] Drinkwitz v. Alliant Techsystems, Inc., 140 Wn.2d 291, 295, 996 P.2d 582 (2000).

[7] Allen v. Asbestos Corp., Ltd., 138 Wn. App. 564, 571, 157 P.3d 406 (2007).

[8] Morgan v. Aurora Pump Co., 159 Wn. App. 724, 729, 248 P.3d 1052 (2011).

[9] Id. (alteration in original) (quoting Lockwood v. AC & S, Inc., 109 Wn.2d 235, 246-47, 744 P.2d 605 (1987)).

[10] See Van Hout v. Celotex Corp., 121 Wn.2d 697, 706-07, 853 P.2d 908 (1993); Lockwood, 109 Wn.2d at 246-47.

on a ship where Lockwood worked.[11] The court explained the rationale for the more lenient standards of proof applicable to asbestos cases:

> Because of the long latency period of asbestosis, the plaintiff's ability to recall specific brands by the time he brings an action will be seriously impaired. A plaintiff who did not work directly with the asbestos products would have further difficulties in personally identifying the manufacturers of such products. The problems of identification are even greater when the plaintiff has been exposed at more than one job site and to more than one manufacturer's product.[12]

Applying the Lockwood standard, in Van Hout v. Celotex Corp., the court held that sufficient evidence supported the jury's verdict for an asbestos plaintiff, where the plaintiff testified that he worked in asbestos dust on ships, and witnesses placed the defendant's asbestos-containing insulation materials on those ships.[13] And this court, applying Lockwood in Allen v. Asbestos Corp., Ltd, concluded the evidence was sufficient to defeat summary judgment where the plaintiff submitted sales records showing that the shipyard purchased the defendant's products containing asbestos during the time his father was employed there.[14]

This court's opinion in Berry v. Crown Cork & Seal Co., Inc. is instructive as to the evidence necessary to survive a defendant's motion for summary judgment.[15] There, the court reversed a summary dismissal of claims by a plaintiff exposed to asbestos products where evidence demonstrated that he worked around materials that created asbestos dust aboard ships, that certain brands of asbestos-containing

---

[11] 109 Wn.2d 235, 247, 744 P.2d 605 (1987).

[12] Id. at 246-47.

[13] 121 Wn.2d 697, 707, 853 P.2d 908 (1993).

[14] 138 Wn. App. 564, 571, 157 P.3d 406 (2007).

[15] 103 Wn. App. 312, 14 P.3d 789 (2000).

5

products were commonly used on ships repaired at his workplace, and the defendant distributed those specific brands of products to the plaintiff's employer.[16]

The facts of this case resemble those in Berry, where there was evidence that the plaintiff worked around materials that created asbestos dust, that certain brands of asbestos-containing products were commonly used at the worksite, and there is evidence allowing the reasonable inference that the defendant distributed or sold an asbestos-containing product used at the plaintiff's worksite.[17]

Montaney presented evidence that (1) he worked at the water district from 1972 until 1995; (2) at times in the course of his work, he performed approximately 10 repair jobs per month using A/C pipe; (3) he used A/C pipe for repairs until 1990 or shortly thereafter; he stopped using A/C pipe 1990; and (4) he was exposed to airborne, asbestos-containing dust.

Montaney testified that he obtained pipe from only two sources: contractors and Pacific. He exclusively used pipe manufactured by Certainteed and Johns-Manville, and purchased Johns-Manville A/C pipe from Pacific. Although he did not buy A/C pipe often, he purchased new A/C pipe from Pacific "into the 1980s."[18] Montaney testified that the water district used new Johns-Manville pipe purchased from Pacific until the early 1990s. Moreover, the record demonstrates that Pacific sold A/C pipe it purchased from JMM from 1983 through 1984, and JMM concedes that it sold A/C pipe between 1983 and 1988.

---

[16] Id. at 315-18.

[17] Id.

[18] Clerk's Papers at 131.

6

From this evidence, a jury could reasonably infer that Montaney purchased new A/C pipe from Pacific in 1983 and 1984, and that the new pipe purchased then would have included A/C pipe sold by JMM. A jury could also reasonably infer that Montaney used the A/C pipe for repairs between 1983 and the early 1990s, when he stopped using A/C pipe altogether. This is enough to establish a prima facie case.

Significantly, the Berry court rejected an argument similar to JMM's here, that the inference of exposure by defendant's products was based on "impermissible speculation."[19] There, as here, the plaintiff did not submit direct evidence that he worked with the defendant's products, and the evidence did not reveal how much, if any, asbestos from defendant's products was released.[20] While no direct evidence demonstrated that Montaney worked with A/C pipe made or sold by JMM, considerable indirect evidence would allow a jury to reasonably conclude that he did.

JMM concedes that Montaney purchased new A/C pipe into the 1980s, but argues that he did not clarify exactly how far into the 1980s such purchases occurred. But the inferences from Montaney's statement must be drawn in his favor. Summary judgment was not appropriate.

Both parties identify potential confusion as to the distinction between Johns-Manville, JMM and J-M A/C Pipe Corporation.[21] There is also conflicting evidence

---

[19] Berry, 103 Wn. App. at 324.

[20] See id. at 324-25 ("The extent to which [defendant] supplied the products as compared with other distributors is irrelevant for purposes of summary judgment.").

[21] In 1982, JMM purchased Johns-Manville's PVC pipe business. Simultaneously, Johns-Manville's A/C pipe manufacturing concern was spun off to a new entity, J-M A/C Pipe Corporation. Thereafter, JMM became the exclusive supplier of Johns-Manville's asbestos-containing Transite pipe on January 1, 1983.

regarding the markings or "trade dress" used on the products.[22] Montaney argues that he and his coworkers would not have made any distinction between Johns-Manville A/C pipe made and sold before 1983 and J-M A/C pipe sold by JMM after January 1, 1983.[23] However, because the other evidence tending to place JMM's products at Montaney's worksite is sufficient to make a prima facie case, resolution of historical details of ownership, manufacture, and trade dress is not necessary for Montaney's claim to survive summary judgment.

JMM's remaining arguments are premised on evidence that appears to contradict Montaney's account. First, JMM argues that a document referring to the water district keeping an inventory of A/C pipe that was claimed to be at least 30 years old when it was abated in 1993 supports summary judgment. But the document does not purport to account for all of the A/C pipe that Montaney worked with during his employment, and at most, raises a question of fact. Second, JMM argues that Montaney's coworkers' testimony establishes that the water district stopped purchasing new A/C pipe prior to 1983. But contradictory evidence on material factual issues precludes summary judgment. To the extent that Hunkeler's and Thompson's testimony contradicts Montaney's testimony, the dispute must be resolved by the trier of fact.

---

[22] JMM contends that Johns-Manville used both JM and J-M as trade dressing, as evidenced by advertisements. In the journals submitted by JMM in its original reply brief, the logo JM appears on a coupling attached to the end of a piece of Transite pipe. Similarly, the logo J-M appears on a piece of Blue Brute PVC pipe. Neither of these pictures shed any light on the issue of whether J-M actually was stamped on Transite pipe. Accordingly, it argues, testimony that the J-M trade dressing appeared on A/C pipe used in Montaney's workplace does not compel the conclusion that the pipe was distributed by JMM.

[23] Montaney also presented evidence that JMM corporate representative Jim Reichert testified in a prior lawsuit that JMM manufactured A/C pipe under the name J-M Transite.

Montaney's evidence supports the reasonable inference that JMM sold A/C pipe through Pacific between 1983 and 1984 that reached Montaney's worksite and was used before 1990. Coupled with the abundant evidence of Montaney's exposure to airborne asbestos dust from A/C pipe while employed at the water district, Montaney states a sufficient prima facie claim against JMM.

Reversed.

WE CONCUR: