IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| ERA CLEVENGER, as Personal Representative of the Estate of JAMES CLEVENGER, | ) ) ) ) | No. 78504-4-I |
| Appellant, | ) ) | |
| v. | ) ) | |
| JOHN CRANE, INC., | ) ) | UNPUBLISHED OPINION |
| Respondent. | ) ) ) | FILED: March 16, 2020 |

VERELLEN, J. — Era Clevenger, the surviving spouse of James Clevenger and the personal representative of his estate, appeals the judgment in favor of John Crane, Inc. (JCI).[1] Era challenges the portion of the proximate cause instruction that requires her to establish James's exposure to JCI's asbestos-containing products was a substantial factor in "bringing about his mesothelioma."

Consistent with the objection she raised in the trial court, Era argues her theory of the case was that exposure to asbestos was a substantial factor in causing either mesothelioma or an asbestos-related lung cancer. We agree that an objective view of the pleadings, opening statements, evidence, and closing

---

[1] For clarity, we refer to Era and James by their first names.

arguments reveals an overarching theory that exposure to asbestos was a substantial factor in James's death from an asbestos-related disease. Under the substantial factor standard for proximate cause in asbestos cases and the facts of this case, substantial evidence supported Era's theory that either mesothelioma or an asbestos-related lung cancer was a viable biological mechanism that resulted in James's asbestos-related tumor and his subsequent death. We conclude the misleading instruction was prejudicial. We vacate the judgment and remand for a new trial consistent with this opinion.

## FACTS

Between 1974 and 2015, James was exposed to various forms of asbestos while working as a boiler technician in the Navy, a maintenance mechanic at a city water department, and a pipefitter. James also had a "30-year smoking history."[2] On March 31, 2016, James filed this lawsuit, alleging an asbestos-related disease. James died on April 21, 2017. On June 8, 2017, Era converted the lawsuit to a wrongful death action.

Trial occurred in February and March of 2018. By the end of trial, JCI was the only remaining defendant. On March 15, 2018, the jury returned a verdict in favor of JCI on all counts. In the special verdict form, the jury found James had an "asbestos-related disease," JCI's product "was not reasonably safe as designed at the time the product was sold," and JCI's product "was not reasonably safe

---

[2] Report of Proceedings (RP) (Mar. 1, 2018) at 2098.

because adequate warnings or instructions were not provided."[3]  But the jury found neither "the unsafe condition" of JCI's products nor "the lack of adequate warning or instruction" on JCI's products was "a proximate cause of injury to James."[4]

Era appeals.

## ANALYSIS

Era seeks reversal and remand for a new trial based on either of two instructional errors.

I.  Jury Instruction 17

Era argues jury instruction 17 did not allow her to adequately argue her theory of the case that exposure to JCI asbestos was a substantial factor in James's death from an asbestos-related disease, whether mesothelioma or lung cancer.  JCI contends the record does not adequately support the alternative diagnosis of lung cancer and, as a result, Era is limited to mesothelioma only.

We review jury instructions de novo.[5]  In general, "'[j]ury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the

---

[3] Clerk's Papers (CP) at 4349-50.

[4] CP at 4350-51.

[5] Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 860, 281 P.2d 289 (2012).

applicable law.'"[6] "Each party is entitled to have the trial court instruct on its theory of the case."[7]

Here, jury instruction 17 provides:

> The term "proximate cause" means a cause that was a substantial factor in bringing about the injury, even if the result would have occurred without it. <u>To establish proximate cause, Plaintiff must prove by a preponderance of the evidence that James Clevenger's exposure to asbestos fibers from products manufactured or supplied by John Crane Inc. were a substantial factor in bringing about his mesothelioma.</u> A substantial factor is an important or material factor that is not insignificant.
>
> There may be more than one proximate cause of injury. It is not a defense that the act of some other entity may have also been a proximate cause.[8]

Era sought to change the second sentence of jury instruction 17 from "mesothelioma" to "cancer." The court denied the request. Later, Era objected to the instruction:

> [T]he jury is being handed a verdict form that asks them to determine whether or not Mr. Clevenger had an asbestos-related cancer, . . . yet being instructed [that] plaintiffs must prove that John Crane products were a substantial factor in bringing about his mesothelioma. There is evidence in this case that both lung cancer and mesothelioma are caused by exposure to asbestos.[9]

---

[6] <u>Keller v. City of Spokane</u>, 146 Wn.2d 237, 249, 44 P.3d 845 (2002) (emphasis added) (quoting <u>Bodin v. City of Stanwood</u>, 130 Wn.2d 726, 732, 927 P.2d 240 (1996)).

[7] <u>Meredith v. Hanson</u>, 40 Wn. App. 170, 174, 697 P.2d 602 (1985).

[8] CP at 4178 (emphasis added).

[9] RP (Mar. 13, 2018) at 3435-36.

To determine a parties' theory of the case, we look at the pleadings, the issues joined for trial, opening statements, the proof submitted at trial, and closing arguments.[10] The complaint lays out the parties' claims and is the first opportunity for the party to articulate its theory of the case. However, the exact issues raised in the complaint may evolve leading up to and during trial.

Here, in the complaint, James and Era asserted several causes of action, including a products liability claim. Generally, in a traditional products liability case, "the plaintiff must establish a reasonable connection between the injury, the product causing the injury, and the manufacturer of that product."[11] In the complaint, James and Era alleged he "suffers from a condition related to exposure to asbestos and asbestos-containing products."[12]

In the opening statement, Era strongly emphasized evidence of mesothelioma[13] but also referred to lung cancer:

---

[10] DeKoning v. Williams, 47 Wn.2d 139, 141-42, 286 P.2d 694 (1955) ("We therefore hold that the giving of a single general instruction on the emergency doctrine did not adequately present to the jury the appellant's sole theory of the case, as alleged in the pleadings, and upon which theory the issues were joined and proof was submitted at the trial." (emphasis added)); see Price v. Dep't of Labor and Indus. of State of Wash., 101 Wn.2d 520, 529, 682 P.2d 307 (1984) ("[T]he Department attorney's theory of the case, as reflected in his closing argument . . . ." (emphasis added)).

[11] Lockwood v. AC & S, Inc., 109 Wn.2d 235, 245, 744 P.2d 605 (1987).

[12] CP at 8 (emphasis added). An exhibit to the complaint refers to mesothelioma. See CP at 22.

[13] "So this is a case about exposure to asbestos. . . . And this is a case about Mr. Clevenger's dose of asbestos from John Crane . . . and others, and those doses being a substantial factor contributing . . . to the disease that ultimately resulted in his death, . . . malignant mesothelioma." RP (Feb. 13, 2018)

> There's going to be some dispute in this case about whether or not Mr. Clevenger had a cancer of the lung or a cancer of the lining of the lung. . . . [I]n either case, asbestos causes both lung cancer and mesothelioma . . . . [W]hen you are dealing with a lung cancer, a cancer of lung cells, not of mesothelial cells, that cigarettes can act in concert, it's called synergistically, to produce a cancer in somebody who has also been exposed to asbestos.[14]

The evidence at trial established broad agreement by both plaintiff and defense experts that James had a spindle cell neoplasm, a tumor.[15] Some experts placed the tumor in or near the pleura, but other experts read the scans as unclear whether the tumor was in or near a lung. The evidence shows disagreement on whether the tumor was localized or diffused and disagreement on the pathological markers of his disease. But both sides embraced a broad differential diagnosis,[16] narrowing the type of tumor to mesothelioma, sarcoma, or carcinoma. Defense

---

at 324-25. "Plaintiffs will prove to you that their products were a substantial factor in causing Mr. Clevenger's eventual death from mesothelioma." Id. at 328.

[14] RP (Feb. 13, 2018) at 339; see also id. at 346 ("And that lung cancer, if that's what you think he died of, was understood as caused by asbestos in the 1950's.").

[15] See RP (Mar. 1, 2018) at 2076 (A spindle cell neoplasm is a "malignant tumor[ ] where the cells have an elongated shape." There are three subclasses of spindle cell neoplasms: sarcoma, carcinoma, and mesothelioma. A sarcoma is "a tumor that arose from the soft tissue, like fat or fibrous tissue." A carcinoma is "a tumor arising from epithelial cells that are say in the lung or in the liver or in intestine." A mesothelioma is "a tumor arising from the pleura, where there are mesothelial cells.")

[16] See In re Morris, 189 Wn. App. 484, 496, 355 P.3d 355 (2015) ("In general, a 'differential diagnosis' is focused on diagnosing the disease."); see also RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM § 28 reporters' notes cmt. c(4) at 456 (AM. LAW INST. 2010) ("'the distinguishing between two or more diseases with similar symptoms by systematically comparing their signs and symptoms'" (quoting MOSBY'S MEDICAL & NURSING DICTIONARY 347 (2d ed. Walter D. Glanze et al eds., 1986))).

experts questioned mesothelioma but could not further categorize James's disease beyond the broad differential diagnosis because of the limited tissue samples available for analysis. Plaintiff's experts took the differential diagnosis a step further and concluded it was most likely mesothelioma. There was evidence that exposure to asbestos can be a substantial factor for mesothelioma or for lung cancer, either in the form of a pulmonary carcinoma or a pulmonary sarcoma.

Specifically, Dr. Arnold Brody,[17] a cellular biologist specializing in lung biology and pathology of asbestos diseases, explained that there are three major asbestos-related diseases: "There's asbestosis, which is scar tissue in the lung. And then there is lung cancer, which is in the airways . . . . And then mesothelioma, which is this cancer . . . specific to asbestos exposure."[18]

Dr. Joseph Ye, James's treating oncologist, testified he first saw James on January 27, 2016. At the time, James presented with shortness of breath and cough. Dr. Ye ordered an X-ray and CT scan. "[H]e was found to have right-sided pleural effusion, which was detected on X-ray, and confirmed by CT scan, showing the right pleural-based lung mass, as well as the right pleural effusion."[19]

---

[17] Era called Dr. Arnold Brody, Dr. Joseph Ye, and Dr. Richard Soboyna. JCI's experts included Dr. Alberto Marchevsky.

[18] RP (Feb. 14, 2018) at 455.

[19] RP (Mar. 7, 2018) at 2756 ("[P]leural effusion is the fluid—normally, we have a small amount of fluid in the pleural space. So pleural space means between the chest wall and the lung, has a small space, so has a little lubricating fluid there to make the lungs expan[d]. When those amount of fluids increased more than normal needed, it's called pleural effusion.").

Dr. Ye ordered a PET scan and a needle core biopsy. After receiving the results of the scan and biopsy, Dr. Ye referred James's chart to the University of Washington's multiple disciplinary review team because the "pathology [was] a little atypical."[20]

One of the team members entered the following clinic note:

> Dr. Martins here indicates that he reviewed the images from the patient's PET scan, and that his tumor is all restricted to the pleural space on the right side. He further indicates that he discussed this case with Dr. Wood, and that they both agree that based on the epidemiology, clinic presentation, and pathology, by far the most likely diagnosis here is of a sarcomatoid mesothelioma.[21]

Dr. Ye agreed with this conclusion. In another note, one of the team members "concurred with sarcomatoid mesothelioma" and identified the disease was "pleural based."[22] In a third note, the team diagnosed James with a "pleural-based mass with biopsy showing spindle cell neoplasm,[23] consistent with a sarcomatoid mesothelioma."[24] The team also identified "spindle cell carcinoma or sarcoma" as another possibility, "but given [James] has a history of exposure to

---

[20] Id. at 2762.

[21] Id. at 2777.

[22] Id. at 2779.

[23] See RP (Mar. 1, 2018) at 2076 (A spindle cell neoplasm is a "malignant tumor[ ] where the cells have an elongated shape." There are three subclasses of spindle cell neoplasms: sarcoma, carcinoma, and mesothelioma. A sarcoma is "a tumor that arose from the soft tissue, like fat or fibrous tissue." A carcinoma is "a tumor arising from epithelial cells that are say in the lung or in the liver or in intestine." A mesothelioma is "a tumor arising from the pleura, where there are mesothelial cells.").

[24] RP (Mar. 7, 2018) at 2780.

8

asbestos, [it is] almost certain this is a presentation of the sarcomatoid mesothelioma."[25]

Dr. Alberto Marchevsky, a licensed pathologist, testified about the pathology of James's illness. Dr. Marchevsky agreed with the initial pathology report that raised "a broad differential diagnosis that includes spindle cell carcinoma, sarcomatoid mesothelioma, and sarcoma."[26] But unlike Dr. Ye and the review team, Dr. Marchevsky was unable to provide a more definitive diagnosis than the broad differential diagnosis. On cross-examination, Dr. Marchevsky clarified, "We really don't know which of those. It is possible it is a mesothelioma, but we cannot say to a reasonable degree of medical certainty that it's probable mesothelioma."[27]

He testified that James suffered from "recurrent pleural effusion" and that symptom is "[c]lassic of mesothelioma and other conditions."[28] But he also testified James's tumor "seemed to appear like a more localized lesion than the typical mesothelioma."[29] As to radiology, Dr. Marchevsky testified:

> It is a bit uncertain, was the tumor in the pleura, was it in the lung. Some imaging showed it was in the [space between the two lungs and the heart] . . . .
>
>      . . . .

---

[25] Id.

[26] RP (Mar. 1, 2018) at 2070.

[27] Id. at 2091.

[28] Id. at 2115.

[29] Id. at 2082.

9

So in this case, we have another reason to make it more complicated. And if it's a tumor that is in the thorax, it could be primarily the lung, it could be a lung cancer, or could it be metastases from another site.

. . . .

In this case, I think there was no image or evidence that the patient had cancer elsewhere. So I think if it were a carcinoma, it would be more likely a lung cancer, but we are speculating to some degree.[30]

With regard to the pathology of the needle core biopsy, Dr. Marchevsky testified that James did not have any positive mesothelioma markers.

At the conclusion of Dr. Marchevsky's testimony, the court allowed the jury to ask questions. Dr. Marchevsky is a co-author of a paper about differentiating between tumors caused by mesothelioma and those caused by carcinomas of the lung. A juror asked, "What are the key markers differing between a definitive mesothelioma diagnosis and Mr. Clevenger's diagnosis?"[31] Dr. Marchevsky's answered:

So basically as we put in the guidelines, in general, it's difficult to tell a sarcoma mesothelioma from other tumors, which is why we went through the trouble of putting together the paper and getting all these people to agree to something.

So basically in a typical mesothelioma, you would like to have the clinical image and findings that I tried to show in the photograph, very diffuse tumor. Mr. Clevenger, the tumor presented a little different. It was a big mass that the radiologists couldn't tell for sure, was it in the lung or the pleura. There were other nodules.

---

[30] Id. at 2098.

[31] Id. at 2140.

Maybe one could say that the tumor was somewhat diffuse because of multiple nodules, but then if the patient had lung cancer, for example, it would have been metastasis of the lung cancer and different nodules. So the radiology is not against me. It's not for me. So it's not finding that we can look at it as a slam dunk and say it's a classic mesothelioma. . . . So in my mind, you have radiology that was not super typical, a biopsy that was not super typical.

I'm a pathologist, so what am I going to do, ask for more tissue, which is what I did. Oncologists and surgeons may look at this in a different way, but I know from my own experience that sometimes they are wrong. When we do an autopsy, sometimes we can see that what they do was not necessarily right.

That's why, as a pathologist, I would have preferred in this case to have a larger biopsy and/or an autopsy to be able to give you a definitive diagnosis.[32]

The jury also heard testimony from Dr. Richard Sobonya, a licensed pathologist specializing in pulmonary and cardiac pathology. Both Dr. Sobonya and Dr. Brody testified about the two subtypes of mesothelioma, epithelioid and sarcomatoid. Dr. Brody testified:

[T]here's no relationship between mesothelioma and sarcoma [a type of lung cancer]. Either you have a mesothelioma or you have a pulmonary sarcoma.

Now, there is a subset of mesotheliomas called sarcomatous mesothelioma. Now, that means—what that tells you is the cell type from which the mesothelioma developed. So if it's an epithelioid mesothelioma, that means that the cancer, the mesothelioma, came from the mesothelial cells themselves.

If it's a sarcomatous mesothelioma, then it came from the connective tissue cells that are part of the pleura that grow under and around the mesothelial cells.[33]

---

[32] Id. at 2140-41.

[33] RP (Feb. 26, 2018) at 1061.

11

Dr. Sobonya studied James's core biopsy sample and pleural fluid samples. Dr. Sobonya opined that James suffered from sarcomatoid mesothelioma. And he testified that it is not unusual to have a "sarcomatoid mesothelioma that presents with a differential diagnosis."[34]

Q:    Would you expect in a lung cancer to see a diffuse tumor growing along the pleura?

A:    Occasionally, a lung cancer will do that. Yes.
Q:    It's pretty odd for a lung cancer to do that though, right?

A:    Right. Those are reportable cases.

      . . . .

Q:    . . . [W]hat you reviewed in this case, did Mr. Clevenger have a localized tumor?

A:    No.

Q:    Okay. How would you describe the tumor that he had?

A:    His tumor involves the pleura diffusely in multiple nodules.[35]

Dr. Sobonya testified that more pathology would be helpful to distinguish between the types of mesothelioma:

Q:    With respect to your opinions in this case though, Doctor, would you like more pathology to distinguish between a lung cancer and mesothelioma or would you like more pathology to distinguish between the type of mesothelioma that he had?

A:    It would be the latter. I would like to see—I would like to see a bigger biopsy that would show the two components that each separate pathology had indicated.

---

[34] RP (Mar. 6, 2018) at 2403.

[35] Id. at 2413-14.

12

Q:     Okay.

A:     But it's mesothelioma[.  T]hat's not up to question.  For sure it's mesothelioma.[36]

Experts on both sides recognized the impact of asbestos exposure on lung cancer.  Dr. Brody testified:

Q:     If Mr. Clevenger has a sarcomatoid mesothelioma, cigarettes played no part in causing his disease, correct?

A:     Correct.

Q:     Okay.  If Mr. Clevenger has a . . . pulmonary sarcoma, a kind of lung cancer, then cigarettes and asbestos would have acted together to cause his disease, correct?

A:     That's correct, yes.  Now, that's where you get the synergy. In other words, if it's a pulmonary lung cancer of a sarcoma variety, then yes, cigarette smoking plus asbestos can play a role.  In fact, you even get a multiplicative increase in the risk if it's a lung cancer.[37]

And Dr. Marchevsky acknowledged that asbestos "can contribute to the causation of lung cancer."[38]

During closing argument, Era's counsel stated, "[W]e're going to walk through this and line up some of the evidence that you have heard and seen in this case with respect to Mr. Clevenger's disease and John Crane's products and their involvement in causing that disease."[39]  Era's counsel pointed to Dr. Ye's

---

[36] Id. at 2421.

[37] RP (Feb. 26, 2018) at 1062.

[38] RP (Mar. 1, 2018) at 2100.

[39] RP (Mar. 13, 2018) at 3448.

testimony that the diagnosis from the review board "was that this gentleman had a sarcomatoid type mesothelioma based on everything combined together."[40]

But Era's counsel also acknowledged JCI's attempt to call into question the mesothelioma diagnosis:

> Defendants want you to believe in this case in order for you to believe that Mr. Clevenger had anything other than a mesothelioma, and we will talk about why it doesn't even matter in this case if he had a mesothelioma or not, because the alternative diagnosis is a lung cancer, which is also caused by exposure to asbestos.[41]

Era's counsel argued James had sarcomatoid mesothelioma. Immediately after making this point, counsel stated,

> But if by some reason you are persuaded that he had some secondary cancer, the only evidence that the defendants have given you is that it was either primary to his pleura or that he had a cancer primary to his lung. He had a lung cancer.[42]

Era's counsel reminded the jury about testimony from both plaintiff's and defense's experts that "asbestos causes lung cancer as well."[43]

> If by some situation you conclude that the gentleman had a lung cancer, then the only math that changes is that his smoking also contributed with his asbestos exposure to cause it. That's it. It doesn't preclude asbestos as a cause of his disease. . . .
>
> When you talk about whether or not he had a sarcomatoid mesothelioma, which should be clear at this point, all you do in that math is take the cigarettes out. Cigarettes do not contribute to or cause sarcomatoid mesothelioma. All of the defense experts agreed

---

[40] Id. at 3450.

[41] Id. at 3450-51.

[42] Id. at 3452.

[43] Id.

on that. All plaintiff's experts agreed on that. So when you are talking about whether or not this gentleman had an asbestos-related disease, the clear answer is yes.[44]

During closing, JCI's counsel emphasized "plaintiff chose to pursue this mesothelioma route," and "[t]hey have to actually prove it was mesothelioma."[45] But JCI also addressed Era's secondary contention and argued, "If it was a carcinoma or a sarcoma, it was caused by or likely caused by his cigarette consumption."[46] And JCI emphasized the differential diagnosis: "It's either a spindle cell carcinoma, sarcomatoid mesothelioma, or a sarcoma."[47]

Our review of the pleadings, opening statements, evidence, and closing arguments reveals Era's single theory of the case was that exposure to asbestos was a substantial factor in James's death from an asbestos-related disease, either mesothelioma or an asbestos-related lung cancer.

JCI's primary argument that the evidence necessarily limits Era to mesothelioma only. Generally, a party is entitled to an instruction on their theory of the case if there is substantial evidence to support it.[48] JCI contends that absent an absolute diagnosis of lung cancer or evidence that James's disease

---

[44] Id. at 3452-53.

[45] RP (Mar. 14, 2018) at 3509-10.

[46] Id. at 3504.

[47] Id. at 3514.

[48] State v. Williams, 132 Wn.2d 248, 259-60, 937 P.2d 1052 (1997); see also Albin v. Nat'l Bank of Commerce of Seattle, 60 Wn.2d 745, 753-54, 375 P.2d 487 (1962).

was most likely lung cancer, Era was limited to mesothelioma only. The logical extension of JCI's argument is that a plaintiff with an atypical tumor that has been narrowed to either mesothelioma or lung cancer is precluded from presenting the jury with alternative diagnoses. This premise is not valid in this unique setting for three reasons.

First, a different proximate causation analysis applies to asbestos litigation. "[B]ecause of the peculiar nature of asbestos products and the development of disease due to exposure to such products, it is extremely difficult" for the plaintiff to establish proximate cause.[49] As a result, our Supreme Court has applied "specific rules . . . to determine whether a plaintiff has satisfied the standard of causation with respect to an alleged asbestos exposure."[50] Under these rules, the plaintiff establishes proximate cause if they show exposure to asbestos was a substantial factor in the victim's injury or death.[51] The substantial factor causation standard departs from the traditional but-for causation standard.[52]

Second, "[w]hether an asbestos plaintiff's evidence states a prima facie case is necessarily a fact-specific inquiry."[53] A fact-specific inquiry here reveals

---

[49] Lockwood, 109 Wn.2d at 248.

[50] 16 WASHINGTON PRACTICE: TORT LAW AND PRACTICE 5.12 , at 241 (4th ed. 2013) (WPI).

[51] 16 WPI 5:11, at 240.

[52] 16 WPI 5:11, at 239.

[53] Montaney v. J-M Mfg. Co., Inc., 178 Wn. App. 541, 544-45, 314 P.3d 1144 (2013).

this case is unique in several regards. Here, the jury found James had an asbestos-related disease. Both sides acknowledged a broad differential diagnosis, narrowed to three asbestos-related diseases: mesothelioma, pulmonary sarcoma, or pulmonary carcinoma. The uncertainty as to a final diagnosis largely arises from the atypical presentation of James's disease. Some indicators were consistent with mesothelioma and some with lung cancer. Both sides agreed James's tumor was atypical in nature, location, and the pathological markers. But most importantly, there is compelling expert testimony that James's exposure to asbestos was a substantial factor as to each of the three viable asbestos-related diseases.

Third, the core causation question in this unusual setting is whether there must be complete certainty as to the precise biological mechanism that resulted in James's asbestos-related tumor and subsequent death. The nuances of that question in the complex and evolving area of toxic tort causation are beyond the briefing on this appeal, but there is clearly support for the concept that some uncertainty as to the exact biological mechanism resulting in an injury from asbestos exposure does not bar recovery.[54] More fundamentally, concepts of

---

[54] For example, one recognized factor in determining the causal relationship between a toxic agent and a disease is whether the causation is biologically plausible. An expert's uncertainty as to the precise biological mechanism goes to the weight, not admissibility, of such evidence. R. Jason Richards, Reflecting on Hill's Original Causation Factors, 52 NOV TRIAL 44, 47 (2016); Jennings v. Baxter Healthcare Corp., 331 Or. 285, 309, 14 P.3d 596 (2000); Kennedy v. Eden Advanced Pest Techs. 222 Or. App. 431, 450-52, 193 P.3d 1030 (2008).

causation largely turn on what reasonable inferences can be drawn from the facts of a specific case. "As philosophers have taught, factual cause is not a phenomenon that can be seen or perceived; instead, it is an inference drawn from prior experience and some, often limited, understanding of the other causal factors—the causal mechanism—required for the outcome. Thus, all causal determinations require inferential reasoning."[55] Generally, the plaintiff can establish proximate cause from inferences arising from circumstantial evidence.[56] On these atypical facts and the existing briefing, we conclude there was a reasonable nonspeculative inference that either mesothelioma or an asbestos-related lung cancer was a viable biological source of James's tumor and his resulting death.[57]

Of course, as the jury instructions and special verdict questions recognized, there are contributory negligence consequences based on James's history of

[55] See RESTATEMENT (THIRD) OF TORTS § 28, cmt. b.

[56] Klossner v San Juan County, 21 Wn. App. 689, 692, 586 P.2d 899 (1978).

[57] JCI cites Board of Regents of University of Washington v. Frederick & Nelson, 90 Wn.2d 82, 85-86, 579 P.2d 346 (1978) for the proposition that a trial court properly gave an instruction withdrawing arson as an alternative cause of a fire when the evidence supported only a mere possibility of arson. The analogy is not helpful here because Board of Regents involved the traditional but-for standard of factual causation, and the experts "rejected [arson] as a cause because of certain characteristics of the fire." Here, the substantial factor standard of causation applies, and the evidence did not rule out an asbestos-related form of lung cancer.

smoking if the jury rejects mesothelioma, but that does not impact whether a mesothelioma-only proximate cause instruction is appropriate.

We conclude, even though Era vigorously argued that mesothelioma was the most likely biological source of James's death, Era was entitled to argue her theory that James's exposure to JCI asbestos was a substantial factor in his death, whether the asbestos-related disease he suffered was mesothelioma or a lung cancer. Jury instruction 17 did not allow her to adequately argue her theory of the case.

Other considerations are consistent with this conclusion. Here, the special verdict form asked and the jury found that James had "an asbestos-related disease."[58] Consistent with the broad differential diagnosis acknowledged by experts for both sides, the jury was presented with evidence that exposure to asbestos is a substantial factor in bringing about mesothelioma, pulmonary sarcoma, or pulmonary carcinoma. The jury necessarily rejected any evidence that James had some disease unrelated to asbestos exposure.

The special verdict form and jury instructions expressly anticipated that the jury would entertain the broad theory that James's asbestos-related disease could be a form of lung cancer. Jury instructions 19 and 20 and the special verdict form questions 9, 10, and 11 address contributory negligence. The only evidence of contributory negligence is James's history of smoking. And consistent with the

---

[58] CP at 4349.

evidence, instructions, and closing arguments, James's smoking history is relevant only if the jury finds he had lung cancer.[59]

JCI's attorneys vigorously argued in closing that Era was limited to mesothelioma and urged the jury to find that she could not recover because there was no compelling evidence of mesothelioma. As instructed by the court and as argued by JCI, the mesothelioma-only construct of jury instruction 17 was squarely presented to the jury.

And the potential for confusion was amplified by the lack consistency in the language of the special verdict form and other instructions, including references to "asbestos-related disease" (question 1 of the special verdict form),[60] "disease" (jury instruction 18),[61] "cancer" (jury instructions 22 and 23),[62] "injury" (questions 3, 5, and 7 of the special verdict form),[63] "injury or damages" (question 10 of the special verdict form),[64] and "death" (jury instruction 28).[65]

---

[59] See RP (Mar. 14, 2018) at 3525 ("Was Mr. Clevenger negligent? . . . [T]he evidence in this case is that he smoked . . . . Dr. Brody testified that if this case is not a mesothelioma, that smoking would be a central issue in the case.").

[60] CP at 4349.

[61] CP at 4179.

[62] CP at 4183, 4185.

[63] CP at 4350-52.

[64] CP at 4353.

[65] CP at 4191.

JCI's other arguments are not compelling. We consider the instructions as a whole.[66] JCI contends jury instruction 17 is of limited consequence because jury instructions 18, 22, and 23, listing the element of proximate cause, refer to "James Clevenger's <u>cancer</u>."[67] But it is also likely the jurors looked to jury instruction 17 for the definition of "proximate cause" when reading jury instructions 18, 22, and 23. Those instructions' use of the word "cancer" does not immunize the misleading nature of jury instruction 17 that limits "proximate cause" to mesothelioma only.

A challenge to a misleading instruction requires a showing of prejudice.[68] "An erroneous instruction is harmless if it did not affect the outcome of the case."[69] JCI contends there was no prejudice because Era was able to argue at closing that even if James died of lung cancer, exposure to JCI's asbestos-containing products was the proximate cause of his cancer. But the opportunity to make an argument contradicted by the jury instructions is pointless. As recognized in <u>Anfinson v. FedEx Ground Package System, Inc.</u>, "[i]t is no answer" that a party "remained free" to raise an argument that was supported by the evidence at trial but not appropriately reflected in the jury instructions.[70]

---

[66] <u>Lewis v. Simpson Timber Co.</u>, 145 Wn. App. 302, 318, 189 P.3d 178 (2008).

[67] CP at 4179, 4183, 4185.

[68] <u>Afinson</u>, 174 Wn.2d at 860.

[69] <u>Terrell v. Hamilton</u>, 190 Wn. App. 489, 502, 358 P.3d 453 (2015).

[70] 174 Wn.2d 851, 876, 281 P.3d 289 (2012).

Finally, JCI contends any error was harmless because the most likely interpretation of the jury's answers to the special verdict form questions was that the jury accepted JCI's argument that James received only a minimal dose of asbestos from JCI's products. We are not convinced. It is also likely the jury was confused by jury instruction 17 and concluded Era could recover only for mesothelioma and not any other asbestos-related disease. It is also troublesome when an instruction defining proximate cause undercuts a party's theory as revealed by the pleadings, opening statement, evidence, and closing arguments. Normally, a proximate cause definition is limited to a general articulation of the legal standards related to the plaintiff's "injury," as in the first sentence of jury instruction 17, and not a specific injury, as in the second sentence.[71]

The proximate cause jury instruction did not allow Era to adequately argue her theory of the case.

II.  Jury Instruction 18

Era also challenges jury instruction 18. She argues jury instruction 18 is erroneous because it was misleading and inaccurately sets forth the law. Although our conclusion on jury instruction 17 is dispositive, we address Era's challenge to jury instruction 18 to provide guidance to the trial court on remand.

"Legal errors in jury instructions are reviewed de novo."[72]

---

[71] See 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 15.01, 15.02, at 193, 199 (2019).

[72] Fergen v. Sestero, 182 Wn.2d 794, 803, 346 P.3d 708 (2015).

Jury instruction 18 lays out factors the jury "should consider" when determining proximate cause in an asbestos case.[73] Era objected to jury instruction 18 and argued, "[T]hese are factors <u>for the court to consider</u> with respect to whether or not plaintiff may proceed with their case [and n]ot for jurors to consider with respect to the substance of [the] substantial [evidence] factor."[74] The trial court denied the objection.

In <u>Lockwood v. AC & S, Inc.</u>, our Supreme Court identified several factors for a trial court to consider "when determining if there is sufficient evidence for a jury to find that causation has been established":

> They should consider the evidence of plaintiff's proximity to the asbestos product when the exposure occurred and the expanse of the work site where asbestos fibers were released. They should also take into account the extent of time that the plaintiff was exposed to the product . . . .
>
> Courts should also consider the types of asbestos products to which the plaintiff was exposed and the ways in which such products were handled and used. . . .

---

[73] "In considering whether a product was a proximate cause of Mr. Clevenger's disease, you should consider the following factors: 1. Plaintiff's proximity to a JCI's product when the exposure occurred; 2. The expanse of the work site where asbestos fibers were released; 3. The extent of time Mr. Clevenger was exposed to the product; 4. What types of asbestos product Mr. Clevenger was exposed to; 5. How Mr. Clevenger handled and used those products; 6. Expert testimony on the effects of inhalation of asbestos on human health in general and Mr. Clevenger in particular; 7. Evidence of any other substances that could have contributed to Mr. Clevenger's cancer and expert testimony as to the combined effect of exposure to all possible sources of the disease." CP at 4179.

[74] RP (Mar. 13, 2018) at 3436 (emphasis added).

In addition, trial courts must consider the evidence presented as to medical causation of the plaintiff's particular disease. Such evidence would include expert testimony on the effects of inhalation of asbestos on human health in general and on the plaintiff in particular. It would also include evidence of any other substances that could have contributed to the plaintiff's disease, and expert testimony as to the combined effects of exposure to all possible sources of the disease. . . .

. . . [T]he factors listed above are matters which trial courts should consider when deciding if the evidence is sufficient to take such cases to the jury.[75]

Era contends jury instruction 18 misstates the law because the Lockwood factors are for the court to consider when addressing whether proximate cause may go to the jury. Although no case prohibits a jury's consideration of the Lockwood factors,[76] we question whether the factors are appropriate for a jury instruction listing what the jury "should" consider to determine proximate cause. We are concerned jury instruction 18 unduly restricts what the jury "may" consider under the circumstances of a particular case. We do not endorse jury instruction 18. In this setting, when the proximate cause instructions are read together, Era does not establish that jury instruction 18 was prejudicial and thus reversible error.

---

[75] 109 Wn.2d 235, 248-249, 744 P.2d 605 (1987); see also Allen v. Asbestos Corp., Ltd., 138 Wn. App. 564, 157 P.3d 406 (2007) ("Lockwood established factors that a court should consider to determine whether sufficient evidence of causation exists.").

[76] See Barabin v. Albany Int'l Corp., 2009 WL 10725367, slip op. at 3 ("The Lockwood court did not require the plaintiff to establish that the defendant's product alone would have caused the plaintiff's injury. . . . Rather, it noted 'a number of factors' a jury may consider in determining whether causation has been established.") (emphasis added).

24

Therefore, because jury instruction 17 was reversible error, we vacate the judgment and remand for a new trial consistent with this opinion.

_Verellen, J._

WE CONCUR:

_Dwyer, J._          _Appelwick, C.J._